[Civ. No. 41182. First Dist., Div. Three. Feb. 6, 1978.]

In re KELVIN M., a Person Coming Under the
Juvenile Court Law.
SOCIAL SERVICES AGENCY, Plaintiff and Respondent, v.
LARRY M., Defendant and Appellant.

**COUNSEL**

Paul N. Halvonik, State Public Defender, under appointment by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State Public Defender, Philip A. Schnayerson and Janet M. Lande, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Thomas A. Brady and Patrick G. Golden, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BROWN (I. A.), J.*—Appellant, Larry M. (hereinafter appellant) appeals from an order of the Alameda Superior Court sitting as a juvenile court sustaining a petition that Kelvin M., a minor (hereinafter the minor) be declared a dependent of the court. For the reasons hereinafter stated, we reverse the order.

Appellant and the minor's mother never married, but the parties have stipulated that appellant is the minor's natural father. Although the minor had, on occasion, lived with appellant for periods of time, at the time of the events referred to herein the minor was living with his mother.

On October 12, 1976, the minor's mother, who has a past history of psychiatric treatment and hospitalization, threatened to kill him. She was then hospitalized in a psychiatric ward and remained there as of October 14, 1976. On that date a petition was filed in the superior court pursuant to Welfare and Institutions Code,[1] section 600, subdivision (a), requesting that the minor be declared a dependent of the court. That section provides:[2]

"Any person under the age of 18 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge such person to be a dependent child of the court.

"(a) Who is in need of proper and effective parental care or control and has no parent or guardian, or has no parent or guardian willing to exercise or capable of exercising such care or control, or has no parent or guardian actually exercising such care or control."

Following a hearing the court sustained the petition and on December 10, 1976, declared the minor to be a dependent of the court under section 600, subdivision (a). On December 13, 1976, the court awarded control and custody of the minor to the social services agency and ordered that he reside in appellant's home.

---

*Assigned by the Chairperson of the Judicial Council.

[1] All references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Welfare and Institutions Code section 600 was repealed in 1976; virtually identical language now appears in section 300.

At the jurisdictional hearing appellant objected to the court's jurisdiction over the minor and made an offer of proof that, as the natural father, he was willing and capable of exercising control over the minor. The juvenile court held that appellant's offer of proof "even if proven, is irrelevant." As indicated above, the court then sustained the petition.

On February 10, 1977 appellant filed a notice of appeal from both the December 10 jurisdictional order and the December 13 dispositional order.

■ Respondent first argues that appellant's appeal is not timely and should be dismissed. Respondent's position is that the appeal is from the December 10, 1976 jurisdictional order and that the notice of appeal was not filed until February 10, 1977, 62 days later. We reject respondent's contention and hold that the appeal is timely.

In *In re Gregory M.* (1977) 68 Cal.App.3d 1085, 1089-1090 [137 Cal.Rptr. 756], the court held that even though the appellant had not filed a timely notice of appeal from the jurisdictional order, the court could consider errors which occurred at the jurisdictional phase because the appellant had filed a timely notice of appeal as to the dispositional order. The court stated that the two aspects of the proceedings were not distinct and likened the dispositional order to the imposition of a sentence in an adult criminal proceeding, pointing out that on an appeal from the imposition of sentence all matters necessarily adjudicated in the proceedings culminating in the order are reviewable. (See also *In re Melvin S.* (1975) 59 Cal.App.3d 898, 900-901 [130 Cal.Rptr. 844].)

In this case, appellant appealed from both the December 10 jurisdictional order and the December 13 dispositional order. His appeal was filed 59 days after the dispositional order. Under *Gregory M., supra,* and *Melvin S., supra,* his appeal was timely. We therefore turn to a consideration of the merits of the appeal.

■ Appellant argues that section 300, subdivision (a) (formerly § 600, subd. (a)) as interpreted and applied by the juvenile court, denies him due process of law by denying him the opportunity to demonstrate his willingness and ability to control and care for his child prior to the declaration by the juvenile court that the minor was a dependent of the court. Appellant's specific objection is that the statute permits a juvenile court to declare a minor a dependent of the court based solely upon the minor's need for "proper and effective parental control" and the fact of

"no parent or guardian actually exercising such care or control." Appellant argues that he was not actually exercising control at the time of the jurisdictional hearing because the juvenile court had earlier ordered the minor detained following his mother's hospitalization. He further argues that as the admitted natural father of the minor he has a right to a hearing and to present evidence as to his fitness as a parent prior to the juvenile court's order declaring the minor a dependent.

In an era of changing life styles accompanied by an unfortunate decline in, or lack of acceptance of, the traditional family unit, our courts have nonetheless recognized and protected one of the most basic of civil rights—the interest of a parent in his or her minor child. Thus in *Stanley v. Illinois* (1972) 405 U.S. 645 [31 L.Ed.2d 551, 92 S.Ct. 1208], the Supreme Court struck down an Illinois statute which automatically declared the children of an unmarried mother wards of the state upon her death, without a hearing showing the lack of fitness of the father. The court found two major constitutional infirmities in the Illinois law. First, the law's presumption of lack of fitness was violative of due process because the father "was entitled to a hearing on his fitness as a parent before his child was taken from him." (*Stanley, supra,* at pp. 649, 657-658 [31 L.Ed.2d at pp. 557, 562-563].) Second, Illinois' statutory scheme violated the unmarried father's right to equal protection of the law by requiring in the case of married parents, divorced parents and unmarried mothers a fitness hearing and proof of neglect prior to the state's assumption of custody of their child (*Stanley, supra,* at pp. 649, 658 [31 L.Ed.2d at pp. 557, 562-563].) In reaching its result the court said:

"The private interest here, that of a man in the children he has sired and raised, undeniably warrants deference and, absent a powerful countervailing interest, protection. It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children 'come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements.' *Kovacs* v. *Cooper,* 336 U.S. 77, 95 (1949) (Frankfurter, J., concurring).

"The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed 'essential,' *Meyer* v. *Nebraska,* 262 U.S. 390, 399 (1923), 'basic civil rights of man,' *Skinner* v. *Oklahoma,* 316 U.S. 535, 541 (1942), and '[r]ights far more precious . . . than property rights,' *May* v. *Anderson,* 345 U.S. 528, 533 (1953). 'It is cardinal with us that the custody, care and nurture of the

child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.' *Prince* v. *Massachusetts,* 321 U.S. 158, 166 (1944). The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, *Meyer* v. *Nebraska, supra,* at 399, the Equal Protection Clause of the Fourteenth Amendment, *Skinner* v. *Oklahoma, supra,* at 541, and the Ninth Amendment, *Griswold* v. *Connecticut,* 381 U.S. 479, 496 (1965) (Goldberg, J., concurring).

"Nor has the law refused to recognize those family relationships unlegitimized by a marriage ceremony. The Court has declared unconstitutional a state statute denying natural, but illegitimate, children a wrongful-death action for the death of their mother, emphasizing that such children cannot be denied the right of other children because familial bonds in such cases were often as warm, enduring, and important as those arising within a more formally organized family unit. *Levy* v. *Louisiana,* 391 U.S. 68, 71-72 (1968). 'To say that the test of equal protection should be the "legal" rather than the biological relationship is to avoid the issue. For the Equal Protection Clause necessarily limits the authority of a State to draw such "legal" lines as it chooses.' *Glona* v. *American Guarantee Co.,* 391 U.S. 73, 75-76 (1968).

"These authorities make it clear that, at the least, Stanley's interest in retaining custody of his children is cognizable and substantial."

Our own high court has also recognized the parent-child relationship as one of the most basic civil rights of a man or woman. (*In re B. G.* (1974) 11 Cal.3d 679 [114 Cal.Rptr. 444, 523 P.2d 244].) In that case the minors were children of a Czechoslovakian father who came to the United States as a political refugee. The mother remained in Czechoslovakia and was there at the time of the jurisdictional hearing. The father died soon after his arrival in California and the two minors were declared dependents pursuant to section 600, subdivision (a). No notice of the jurisdictional hearing was given to the mother. The finding of dependency was based on the same portion of section 600, subdivision (a) as was the finding in this case. The Supreme Court stated: "Welfare and Institutions Code section 600, subdivision (a), permits the court to adjudge a minor to be a dependent child of the court if he 'is in need of proper and effective parental care or control and has no parent or guardian, or has no parent or guardian willing to exercise or capable of exercising such care or control, *or has no parent or guardian actually exercising such care or control.'* (Italics added.) As of August 29, 1969, the

children's father was dead; their mother was in Czechoslovakia recovering from an auto accident; they had no legal guardian. The juvenile court therefore found the children fell under the terms of this section and adjudged them dependents of the court." (11 Cal.3d 679, at p. 688.)

The court found that the failure to give the mother notice of the jurisdictional hearing deprived her of due process of law, saying:

"Nonetheless, the jurisdictional determination of August 29, 1969, suffers from a fatal defect. Since the interest of a parent in the companionship, care, custody, and management of his children is a compelling one, ranked among the most basic of civil rights (*Stanley* v. *Illinois* (1972) 405 U.S. 645, 651 [31 L.Ed.2d 551, 558-559, 92 S.Ct. 1208]; *Lois R.* v. *Superior Court* (1971) 19 Cal.App.3d 895, 901 [97 Cal.Rptr. 1581]), the state, before depriving a parent of this interest, must afford him adequate notice and an opportunity to be heard. (*In re Moilanen* (1951) 104 Cal.App.2d 835, 842 [233 P.2d 91]; *In re Spiers* (1936) 15 Cal.App.2d 487, 491 [59 P.2d 838].)

"We recognize that the department, faced with the task of notifying a resident of a foreign nation whose address may be uncertain, may be called upon to use unconventional forms of notice which may not always succeed in apprising the party of his opportunity to appear (see *Mullane* v. *Central Hanover Tr. Co.* (1950) 339 U.S. 306, 315 [94 L.Ed. 865, 873-874, 70 S.Ct. 652]). But total absence of notice in any form cannot comport with the requirements of due process. (See *Mullane* v. *Central Hanover Tr. Co., supra,* 339 U.S. at pp. 314-315 [94 L.Ed. at pp. 873-874]; *Guerrero* v. *Carleson* (1973) 9 Cal.3d 808, 811 [109 Cal.Rptr. 201, 512 P.2d 833].)" (11 Cal.3d at pp. 688-689.) The court held, however, that the mother had waived her right to challenge the jurisdictional order. No such waiver is claimed or present in this case.

To us, the Supreme Court's language is clear and unequivocal. A parent cannot be deprived of one of his or her most basic civil rights without being afforded adequate notice and an opportunity to be heard. In *In re B. G.,* due process was violated because the mother did not receive notice. In this case, although appellant received notice of the jurisdictional hearing, he was given no opportunity to be heard—to present evidence—because the juvenile court held his evidence irrelevant. Since due process requires both notice *and* an opportunity to be heard, the juvenile court's ruling deprived appellant of his right to due process and requires reversal.

Respondent's reliance on *In re Adele L.* (1968) 267 Cal.App.2d 397 [73 Cal.Rptr. 76] is misplaced. In that case custody of the minor had been taken from the father and awarded to the mother pursuant to a decree of divorce. Against the father's challenge the court upheld the jurisdictional order of the juvenile court after the child was taken from the mother, noting that "[c]ustody of the minor had already been taken from the father and placed in the mother by the divorce decree. At the time of the juvenile court hearing, the mother was the only person chargeable with the responsibility of care and custody of the minor." (*In re Adele L., supra*, at p. 402.) Since the petition alleged and the facts established that the mother had failed in her responsibility, the juvenile court properly sustained the petition. In the case at bench custody had not been awarded to either parent by court order. Hence, under Civil Code section 197 (eff. 1976), appellant and the minor's mother are equally entitled to the custody of the minor. That section provides: "The . . . mother of . . . an unmarried minor child . . . *is* entitled to its custody, services and earnings. *The father of the child, if presumed to be the father under subdivision (a) of Section 7004, is equally entitled to the custody, services and earnings of the unmarried minor.* If either the father or mother be dead or unable or refuse to take the custody or has abandoned his or her family, the other is entitled to its custody, services and earnings." Here not only is it agreed that appellant is the father, he also is the presumed father under Civil Code section 7004, subdivision (a)(4) because he has received the minor into his home and has openly held him out as his son. But for the fact that the juvenile court had ordered the minor detained following his mother's hospitalization, appellant was entitled to the minor's custody under Civil Code section 197. Thus *In re Adele L.* is distinguishable on its facts.

In any event the dictum in *In re Adele L.* to the effect that a parent is not entitled to notice and a hearing in a section 300, subdivision (a) proceeding if he or she is not actually exercising care or control is not viable in light of *Stanley* v. *Illinois, supra, In re B. G., supra*, and Civil Code section 197, and we decline to follow it.

In view of our holding with respect to the due process issue, we need not address in detail appellant's argument that he was denied equal protection of the laws. We need only note that his argument misses the point. The theory of the petition and the basis for the juvenile court's finding was that there was no parent both willing and capable of

exercising control. Hence there was no disparity in the treatment afforded the mother and the father and no issue as to equal protection.

For the same reason we need not discuss appellant's argument that his right to privacy was abridged.

Since the juvenile court erred in making the jurisdictional order of December 10, it was without jurisdiction to make the dispositional order of December 13. We therefore reverse both orders.

Feinberg, J., concurred.

**SCOTT, Acting P. J.**—I concur in the judgment.

The notice requirements for the dependency hearing are set forth in section 325 et seq. Parents are required to be notified (§§ 332, 335). Parents include fathers of illegitimate children (see *Stanley* v. *Illinois* (1972) 405 U.S. 645 [31 L.Ed.2d 551, 92 S.Ct. 1208]; see also *In re Reyna* (1976) 55 Cal.App.3d 288, 297 [126 Cal.Rptr. 138].) The parent is entitled to be present and represented by an attorney (§§ 336, subd. (e), 349). If the parent is indigent, he is entitled to a court-appointed attorney (§ 336, subd. (e)). Parents have the right to subpoena witnesses (§ 341). At the hearing of the dependency petition, the judge is required to ascertain the "jurisdictional facts" (§ 350). Section 355 provides that in determining the jurisdictional facts "any matter or information relevant and material to the circumstances or acts which are alleged to bring him [the minor] within the jurisdiction of the juvenile court is admissible and may be received in evidence." From this statutory scheme it is clearly contemplated that the parent is entitled to be present, represented by counsel, and present relevant evidence concerning the jurisdictional Facts. Furthermore, in *In re B. G.* (1974) 11 Cal.3d 679 [114 Cal.Rptr. 444, 523 P.2d 244], the court stated (at pp. 688-689), "the state, before depriving a parent of this interest [that is, child custody] must afford him adequate notice and *an opportunity to be heard.* [Citations.]" [Italics added.]

The court here, in not permitting the father to present evidence, simply failed to follow the hearing requirements of the statute. The

questions of jurisdiction and disposition of the minor are governed by Welfare and Institutions Code section 300, subdivision (a) and Civil Code section 4600 (see *In re B. G., supra,* at pp. 693-699).