[No. G009538. Fourth Dist., Div. Three. Oct. 30, 1991.]

In re MEGAN B., a Person Coming Under the Juvenile Court Law.
ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and
Respondent, v.
ANNETTE B. et al., Defendants and Appellants.

## COUNSEL

Meyer I. Goldstein, Patricia Herzog and Lori Lawson, under appointments by the Court of Appeal, for Defendants and Appellants.

Adrian Kuyper, County Counsel, Christopher J. Miller, Deputy County Counsel, and W. Breck MacLaren for Plaintiff and Respondent.

Harold LaFlamme and Karen Cianfrani, under appointments by the Court of Appeal, for the Minor.

## OPINION

**MOORE, J.**—Annette and Paul B., Megan B.'s parents, filed separate notices of appeal after the permanency planning hearing in a dependency proceeding under Welfare and Institutions Code section 300.[1] Annette contends the record fails to establish she knowingly and intelligently waived her rights when entering a plea of nolo contendere at the jurisdictional hearing, the evidence does not support the trial court's finding there was a substantial risk of detriment to Megan's emotional well-being if returned to her, the authorization to commence an action to terminate parental rights was void because the trial court improperly shifted the burden of proof to the parents and the evidence failed to support a finding Megan would not benefit from a continuing relationship with her, and the trial court abused its discretion by reducing her visitation with Megan. Paul argues the trial court lacked jurisdiction to order Megan freed for adoption because he was not notified the court would consider that alternative at the permanency planning hearing.

We conclude Annette's first argument is untimely and, with the exception of the visitation order, the other rulings challenged by both parents are nonappealable under section 366.25, subdivision (j). Thus, we dismiss the appeals as to these rulings. The visitation order, while appealable, is affirmed.

### FACTUAL AND PROCEDURAL BACKBROUND

On April 7, 1988, respondent filed a petition to declare Megan a dependent child under section 300, subdivision (d), alleging she had been sexually

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

molested and her parents "knew or should have known of [the] incident or incidents of sexual molestation and failed to protect [her] . . . ." The court ordered Megan detained by the Orange County Social Services Agency (SSA), and also granted a motion for standing by Barbara B., Megan's paternal grandmother. On April 29, the parties stipulated that Megan be released to a paternal aunt. An amended petition filed July 1 added a second count under section 300, subdivision (a) alleging appellants had failed to properly and effectively exercise parental care and control over Megan.

The matter was set for a jurisdictional hearing on September 14. At that time, the petition was again amended to add a third count under section 300, subdivision (d). Paul entered a plea of nolo contendere to count III. On September 15, the court amended the last line of count I of the original petition striking the word "failed" and inserting the phrase "was unable." Annette then entered a plea of nolo contendere to that count.

A dispositional hearing was held September 29, 30 and October 5. The court advised Paul of the provisions of Civil Code section 232. After receiving evidence, the court ordered appellants to comply with the service plan contained in the social service report. In part, that plan required appellants: (1) Participate in parenting classes and in drug testing and counseling programs as recommended by their therapists; (2) establish a stable residence adequate for Megan's needs; (3) visit Megan at least twice a month; and (4) sign information releases concerning their progress in the drug testing, parenting and counseling programs. Annette was also ordered to obtain counseling addressing her sexual abuse as a child, marital conflict and her poor self-concept. The plan directed Paul to obtain counseling addressing issues of sexual abuse, establishing a stable lifestyle and handling marital conflict.

At the six-month review held April 5, 1989, the court found conditions justified continuing its jurisdiction over Megan. The matter was continued for a progress review and a permanency planning hearing. The court informed appellants of the provisions of Civil Code section 232 and section 366.25. At the progress review hearing, the court directed all prior orders remain in effect. However, Annette's visitation with Megan was increased to one and one-half hours each week.

After several continuances, the permanency planning hearing finally began February 13, 1990. Further proceedings were held February 14, 15 and 16, March 26 and 27, and April 18, 19, 20, 23 and 24. Testimony was presented by Dr. Jaye-Jo Portanova, Megan's therapist, who had been treating the child weekly since May 1988. Also testifying at the hearing were

Annette, Paul, Barbara, the social worker, Paul's therapist, and clinical psychologists who performed court-ordered evaluations of Paul and Annette.

By the time of the hearing Annette and Paul had separated, and marital dissolution proceedings were in progress. During the 22 months which elapsed since Megan was removed from their custody, she had been living in the homes of two paternal aunts.

The supplemental reports prepared for the hearing recommended a guardianship be established placing Megan with her paternal relatives. Briefs filed on behalf of both Megan and Barbara concurred with that recommendation. However, the report also noted a joint review by SSA's foster care and adoption staffs concluded it was likely Megan could be adopted. At the hearing, Barbara's lawyer argued Megan was adoptable and would not benefit from continued contact with her parents.

Dr. Portanova testified Megan identified both Annette and Paul as the persons who molested her. However, Megan's identification of Annette as a perpetrator decreased over time, while her statements about Paul's involvement remained the same. Paul completed a parenting class and attended drug and individual counseling sessions. But he had failed to address the issues concerning his sexual abuse of Megan. Tests conducted by his therapist and the clinical psychologist indicated Paul had an antisocial personality disorder.

Annette had made unsatisfactory progress with the service plan. Her attendance at counseling sessions was minimal. She failed to complete parenting classes, was reluctant about getting counseling for her own sexual abuse problem, and had not maintained a stable source of income. Furthermore, despite evidence to the contrary, she did not believe Paul had molested Megan.

Concerning visitation, Annette admitted that for the first few months after the dependency proceedings began, her visits with Megan were infrequent. Although claiming she thereafter consistently visited Megan, Annette also admitted missing several visits in the latter part of 1989. During the permanency planning hearing, Annette was allowed an increase in visitation to twice a week. But she never made any of the additional visits. The social worker's report for the permanency planning hearing, prepared in October 1989, stated Annette had not seen Megan for three weeks. At the hearing, the social worker testified Annette's visitation with Megan had not been consistent for the last few months.

At the hearing's conclusion, the court found, by a preponderance of the evidence, that returning Megan to Paul would create a substantial risk of

detriment to her physical and emotional well-being, returning Megan to Annette would create a substantial risk of detriment to her emotional well-being, and it was unlikely she would be returned to either parent within six months. The court also found Megan could be adopted by Barbara or another family member, and the conditions of section 366.25, subdivision (d)(1) did not exist. It authorized SSA to initiate proceedings to terminate parental rights under Civil Code section 232. Later, the court reduced visitation with Megan from one and one-half hours per week to one hour every two weeks.

Annette and Paul filed separate appeals. Thereafter, Annette petitioned this court for a writ of mandate. We denied the petition.[2] SSA moved to dismiss the appeals arguing an order authorizing commencement of parental termination proceedings is not appealable. We ordered the motion consolidated with the appeals.

DISCUSSION

## I. *Validity of the Jurisdictional Finding*

Annette's first attack on the permanency planning order is made via a challenge to the juvenile court's initial jurisdictional finding. She points out the California Rules of Court[3] provide that when a plea of no contest is entered, the court must find the parent understands and knowingly and intelligently waives his or her rights to a trial, to assert the privilege against self-incrimination, to confront and cross-examine witnesses, and to compel the attendance of witnesses at trial. Arguing the record does not reflect the court made the requisite findings, Annette maintains that, absent a knowing and intelligent waiver of her rights, her plea was defective and the invalid jurisdictional finding based on it voided any orders thereafter entered by the court.

---

[2] The writ petition was filed on Annette's behalf by her appellate lawyer. The very nature of extraordinary relief in a proceeding such as this suggests it is more practical for trial counsel to file the writ petition. Trial counsel already knows what happened and why a writ is necessary, and can complete and file the petition even before the record is prepared. (See Cal. Rules of Court, rule 56(c)(4).) In contrast, a newly appointed attorney would have to await preparation of the record before tackling the petition. By then, it may well be too late to grant any effective relief.

[3] Rule 1449(f) states, in part: "Upon admission, plea of no contest, or submission, the court shall make the following findings noted in the order of the court: . . . [¶] (3) The parent or guardian has knowingly and intelligently waived the right to a trial on the issues by the court, the right to assert the privilege against self-incrimination, and the right to confront and to cross-examine adverse witnesses and to use the process of the court to compel the attendance of witnesses on the parent or guardian's behalf; [¶] (4) The parent or guardian understands the nature of the conduct alleged in the petition and the possible consequences of an admission . . . [¶] (5) The admission . . . by the parent or guardian is freely and voluntarily made, . . ."

Her assault on the validity of the jurisdictional finding comes too late. Section 395 states in part: "A judgment in a proceeding under Section 300 may be appealed from in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment; . . ." In a dependency proceeding, the dispositional order constitutes a judgment. (*In re Eli F.* (1989) 212 Cal.App.3d 228, 233 [260 Cal.Rptr. 453]; *In re Kelvin M.* (1978) 77 Cal.App.3d 396, 399 [143 Cal.Rptr. 561].) A jurisdictional finding, while not appealable, may be reviewed in an appeal from the dispositional order. (*In re James J.* (1986) 187 Cal.App.3d 1339, 1342 [232 Cal.Rptr. 456].) But appellate jurisdiction is dependent upon the filing of a timely notice of appeal. (*Mauro B. v. Superior Court* (1991) 230 Cal.App.3d 949, 953 [281 Cal.Rptr. 507]; *In re Elizabeth G.* (1988) 205 Cal.App.3d 1327, 1331 [253 Cal.Rptr. 161].) "An appeal from the most recent order entered in a dependency matter may not challenge prior orders, for which the statutory time for filing an appeal has passed." (*In re Elizabeth M.* (1991) 232 Cal.App.3d 553, 563 [283 Cal.Rptr. 483]. See also *In re Elizabeth G., supra,* 205 Cal.App.3d at p. 1331.)

Here, Annette did not appeal from the dispositional order and the time for doing so has long since expired. Instead, she remained silent and attempted, without much success, to complete the service plan implemented by the trial court. No objection to the lower court's exercise of jurisdiction over Megan was made until after the completion of the permanency planning hearing.

Annette relies on *In re Kristin B.* (1986) 187 Cal.App.3d 596 [232 Cal.Rptr. 36] for the proposition a jurisdictional defect may be attacked in conjunction with an appeal from a permanency planning order. There, we held that, "where a judgment terminating parental rights is challenged on appeal, an earlier appeal arising out of a juvenile court dependency proceeding is not moot *if* the purported error is of such magnitude as to infect the outcome of the ensuing termination action or where the alleged defect undermines the juvenile court's initial jurisdictional finding." (*Id.* at p. 605.)

However, *Kristin B.* is inapt here. The issue in that case arose in a different context. The question was whether an appeal from a permanency planning order authorizing the initiation of termination proceedings was rendered moot by the subsequent judgment terminating parental rights. Here, only the permanency planning order is challenged. Appellants' parental rights have not yet been terminated.

Accordingly, Annette's challenge to the jurisdictional finding is time barred in light of her acquiescence in the dispositional order.

## II. *The Permanency Planning Hearing Rulings*

Annette's remaining arguments challenge the lower court's finding of a substantial risk of detriment to Megan's emotional well-being if returned to her, its jurisdiction to authorize SSA to commence an action under Civil Code section 232, and the order reducing her visitation with Megan. We conclude the first two contentions are also not cognizable in this appeal and the latter claim is without merit.

■ Section 366.25, subdivision (j) provides: "An order by the court that authorizes the filing of a petition to terminate parental rights pursuant to [Civil Code] Section 232 or that authorizes the initiation of guardianship proceedings is not an appealable order but may be the subject of review by extraordinary writ." *In re Eli F., supra*, 212 Cal.App.3d 228 held: "[W]e conclude that by its enactment of subdivision (j) of section 366.25 the Legislature intended to preclude appeals *only* from an order authorizing the filing of a parental termination action or initiating a guardianship proceeding. Other contemporaneous orders made during a permanency planning hearing remain appealable pursuant to the general rule of section 395 . . . ." (*Id.* at pp. 235-236.) However, an appeal from other contemporaneous rulings can also be barred if the appellant's "contentions are designed to overturn the court's order 'that authorizes the filing of a petition to terminate parental rights,' . . . ." (*Id.* at p. 236. See also *In re Elizabeth M., supra*, 232 Cal.App.3d at p. 562; *In re Kristin W.* (1990) 222 Cal.App.3d 234, 245-246 [271 Cal.Rptr. 629].)

■ Annette's first two arguments refer to matters that were instrumental in enabling the court to authorize termination of parental rights, and therefore are not independent of that order. We easily dispose of Annette's argument the court lacked jurisdiction to authorize a termination proceeding. Notwithstanding the claim that the underlying finding of no benefit to Megan from continuing the relationship with her mother was based on insufficient evidence and a misplaced burden of proof, it is clear Annette's only goal is to overturn the order permitting termination of appellants' parental rights.

Although not as clear, the same holds true with respect to Annette's contention the evidence was insufficient to support the court's determination the risk of detriment to Megan's emotional well-being precluded the child's return to her. This finding was a prerequisite to the court's decision to authorize termination proceedings. Accordingly, the only thing to be accomplished by challenging the finding would be a reversal of the authorization order.

█  The order reducing visitation is another matter. In *In re Kristin W.*, *supra*, 222 Cal.App.3d 234, the court removed a father's children from his home and ordered the county to provide him with reunification services, but did not grant visitation with the children. The county developed a plan which permitted the father to visit his children. Later, the court authorized the county to proceed with an action to terminate his parental rights under Civil Code section 232.

The father's appeal in part challenged the trial court's failure to exercise its jurisdiction concerning visitation. The Court of Appeal found this issue to be cognizable on appeal. "Although visitation was never ordered by the court, it was allowed informally by the Agency as part of the 'reunification plan' on terms suitable to the Agency. A decision whether to grant visitation rights to a parent is independent of any decision authorizing the termination of parental rights. Visitation may be granted or continued to a parent during the time it takes to determine whether parental rights should be terminated. [Citations.] Because the granting of parental visitation rights is not inconsistent with a permanency planning order authorizing termination of parental rights, a visitation order is not within the parameters of section 366.25, subdivision (j) and thus is appealable under section 395." (*Id.* at p. 248, italics added. See also *In re Elizabeth M.*, *supra*, 232 Cal.App.3d at p. 564.)

As *In re Kristin W.*, *supra*, 222 Cal.App.3d 234 notes, a court has the power to grant or continue visitation while a decision is being made on whether to terminate parental rights. Consequently, the court must also have the authority to modify the terms of visitation if the conditions warrant it.

While the orders authorizing termination of parental rights and reducing visitation were both made during the permanency planning hearing, they were not made together or for the same reasons. The lower court issued its authorization order during the morning session. In making the findings required by section 366.25, subdivision (d)(1)(A), the court recognized the evidence fell "a little bit short" of establishing Annette had maintained regular visitation with Megan. Nonetheless, it gave Annette "the benefit of the doubt" and assumed she had done so. But the court concluded Megan would not benefit from continuing the relationship.

The visitation order was not considered until the afternoon session. At that time, SSA requested visitation be reduced to one hour a month for each parent. The lower court did not state its reasons for reducing visitation. However, SSA argued a reduction was appropriate because Annette had not been consistent in exercising her visitation rights under the prior plan.

Counsel for the paternal grandmother concurred in the request to reduce visitation, claiming SSA's adoptions division scheduled visitation on the basis of one hour once a month. Therefore, no matter how we rule on the visitation order it would not affect the authorization to terminate appellants' parental rights. We conclude the visitation order is appealable.

■ Nonetheless, the ruling was not erroneous. ■ Courts have long held that in matters concerning child custody and visitation trial courts are vested with broad discretion. On appeal the exercise of that discretion will not be reversed unless the record clearly shows it was abused. (*Sanchez* v. *Sanchez* (1961) 55 Cal.2d 118, 121 [358 P.2d 533]; *In re Marriage of Murga* (1980) 103 Cal.App.3d 498, 504 [163 Cal.Rptr. 79].)

■ The record supports SSA's contention Annette's visitation with Megan was inconsistent. Annette admitted missing visits, and the social worker testified that in the months preceding the permanency planning hearing, her visitation had become inconsistent. When given an opportunity for additional visitation during the hearing, Annette failed to take advantage of it. The reduced visitation was also apparently more in line with SSA's scheduling in similar cases.

Much of Annette's argument on appeal is relevant only where a court chooses to terminate visitation altogether. Here, that is not so. Appellants were permitted to continue visiting minor, but on a reduced basis.

Under the circumstances, we conclude Annette's first two contentions relating to the permanency planning hearing are not cognizable on appeal, and while the visitation order is appealable, the record supports the lower court's exercise of its discretion to reduce visitation.

### III. *Due Process*

■ Paul's appeal raises a single issue. While acknowledging an order authorizing the filing of an action to terminate his parental rights is nonappealable, he maintains it constitutes a denial of due process and is therefore void because he was not given notice one of the alternatives to be considered at the hearing was an adoption. As far as he was concerned it was contemplated that, at most, a guardianship would be established.

First, this argument is not supported by the record. Paul was informed of the provisions of Civil Code section 232 at the time of the dispositional hearing. Further, the court admonished Paul at the April 1989 review hearing, in compliance with section 366.2, subdivision (e) as follows: "If this child . . . is not placed back in your custody in your home within one year of the date of her detention or her removal [from your] custody, you could

lose all parental rights in this child, and she could be placed . . . for adoption, guardianship or long-term foster care."

Second, Paul's attorney voiced no objection at the permanency planning hearing to the court's inquiry as to whether Megan would benefit from continuing the relationship with her father. Nor did counsel request an opportunity to present additional evidence.

Finally, Paul's argument does not transform the trial court's decision into an appealable ruling. In *In re Carina C.* (1990) 218 Cal.App.3d 617 [267 Cal.Rptr. 205], the appellant mother argued she was not bound by the restrictions of section 366.25, subdivision (j) because the challenged orders were made by a referee who lacked jurisdiction. The appellate court disagreed, stating, "The fact [appellant] claims a jurisdictional defect in the orders of the juvenile court does not remove those orders from the plain language of subdivision (j). This case falls squarely within that subdivision. [Citations.]" (*Id.* at p. 621.) Similarly, Paul's due process argument is but a disguised attempt to undo the court's authorization order. As such, it is nonappealable.

## DISPOSITION

The order reducing visitation with Megan is affirmed. In all other respects, the appeals are dismissed.

Sills, P. J., concurred.

**SONENSHINE, J.,** Concurring and Dissenting.—I concur with part III of the majority opinion in its entirety. However, I respectfully dissent with respect to portions of parts I and II.

As for part I, I agree with the majority's conclusion that *In re Kristin B.* (1986) 187 Cal.App.3d 596 [232 Cal.Rptr. 36] does not support Annette's position and that her jurisdictional attack came too late. However, this is not because the appeal is from a permanency planning order rather than a judgment terminating parental rights, as in *Kristin B.* It is because our opinion in *Kristin B.* inadvertently categorized a permanency planning order as a dispositional order. And, as a result, we erroneously concluded that an alleged jurisdictional defect may be raised in an appeal from a permanency planning order.

Citing *In re Gregory M.* (1977) 68 Cal.App.3d 1085, 1090 [137 Cal.Rptr. 756], we noted, "An appeal from a dispositional order embodies an attack on the initial jurisdictional finding." (*In re Kristin B., supra,* 187 Cal.App.3d at p. 605, fn. 9.) Indeed, at the dispositional hearing, the court hears evidence to assist in its determination as to whether dependency will be declared and,

if so, whether the minor will remain with one or both parents or be placed in another setting. The ruling emanating from that hearing is the dispositional order. A permanency planning order, on the other hand, is made long after the dispositional hearing. Accordingly, Annette's challenge to the jurisdictional finding is time barred in light of her acquiescence in the dispositional order—not because her appeal is limited to an attack on the permanency planning order.

With respect to part II, I disagree with my colleagues' conclusion the visitation order is appealable. Among the issues the *Kristin W. (In re Kristin W.* (1990) 222 Cal.App.3d 234 [271 Cal.Rptr. 629]; hereafter *Kristin W.*) court found to be cognizable on appeal was the trial court's failure to exercise its jurisdiction concerning visitation. Relying on that court's reasoning, the majority holds that Annette's challenge to the visitation ruling is likewise appealable. But unlike the situation in that case, the visitation order here does not encompass a matter which is independent of the reference order. Like the other rulings made at the permanency planning hearing, the one pertaining to visitation was instrumental in enabling the court to reach its decision that termination of parental rights was next on the agenda. Accordingly, Annette's dissatisfaction with the visitation order is a direct attack on the court's order authorizing termination proceedings and is nonappealable.

The appeal from the visitation order in *Kristin W., supra,* 222 Cal.App.3d 234, constituted an independent attack. The trial court, having impermissibly delegated complete discretion to the social worker to determine whether or not to permit visitation, failed to exercise its jurisdiction by making no visitation order. The Court of Appeal explained, "Because the granting of parental visitation rights is *not inconsistent* with a permanency planning order authorizing termination of parental rights, a visitation order is not within the parameters of section 366.25, subdivision (j) . . . ." (*Id.* at p. 248, italics added.) Thus, because it is incumbent upon a trial court to grant visitation regardless of whether it decides that parental rights should be terminated, this requirement, and hence the court's failure in *Kristin W.* to satisfy the requirement, has virtually nothing to do with the reference order.

Here, however, the court did not fail to make a visitation order. It made an order simply reducing the amount of visitation previously allowed. And, unlike the situation in *Kristin W., supra,* 222 Cal.App.3d 234, this order has *everything* to do with the reference order. Indeed, the court's discretion in reducing visitation was exercised in *conjunction with* its decision to authorize the termination of parental rights.

It follows that the order reducing visitation and the reference order mandate simultaneous review. Any error in reducing visitation would be the

same error responsible for an improper reference order. Also, a finding that the reference order is erroneous would warrant reconsideration of the order reducing visitation. If termination of parental rights is not anticipated, there may well be no reason to reduce visitation.

The majority makes much of the fact the order authorizing termination of parental rights and the order reducing visitation were not issued simultaneously. So what. No matter what time of day the court ordered the reduction in visitation (the purpose of which was clearly to soften the potential impact of the anticipated termination of parental rights), the two rulings were made as part of the same order. Indeed, this is not unlike a posttrial judgment which encompasses rulings made periodically throughout a trial, which may have lasted as much as six months (including three hundred sixty mornings and afternoons).

I also disagree with the majority's assertion the order is appealable because no matter how the court rules on visitation, it will not affect the order authorizing the initiation of termination proceedings. To make this statement is to miss the whole point, i.e., that the two orders are but flip sides of a single coin, the coin representing the child's permanent plan. The visitation plan goes hand in hand with the authorization for the termination proceeding. A decrease in visitation is part of the authorization.[1] Accordingly, while it is conceivable the statement by the majority may comply with the letter of the law, it falls short of its spirit.

In essence, the order reducing visitation does not stand alone; it depends for its continuation upon the propriety of the reference order. Thus, under *Kristin W., supra*, 222 Cal.App.3d 234, the challenged ruling is not independent of the one authorizing a permanent plan of adoption and on that basis is nonappealable.

I would dismiss Annette's appeal in its entirety.

A petition for a rehearing was denied November 22, 1991, and appellants' petition for review by the Supreme Court was denied February 26, 1992.

---

[1]Indeed, as the majority recognizes, SSA's adoptions division, in implementing the termination of parental rights, schedules visitation on the basis of one hour per month. It follows that visitation was reduced, not because Annette had been inconsistent in exercising her visitation rights, but because reduction in visitation is a given when the court orders the initiation of termination proceedings.