95 Cal.App.3d 593 (1979)
157 Cal. Rptr. 280
In re LA SHONDA B., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, Plaintiff and Appellant,
v.
JOHNNIE B., Defendant and Respondent.
Docket No. 55193.
Court of Appeals of California, Second District, Division Five.
July 30, 1979.
*595 COUNSEL
John H. Larson, County Counsel, and Sterling R. Honea, Deputy County Counsel, for Plaintiff and Appellant.
Kenneth Krekorian for Defendant and Respondent.
*596 OPINION
STEPHENS, J.
The Los Angeles County Department of Public Social Services (DPSS) appeals the dismissal of its petition in a dependency proceeding.
On February 10, 1978, the DPSS filed a dependency petition in juvenile court alleging that the minor, La Shonda B., was a person described by Welfare and Institutions Code section 300, subdivisions (a) and (d).[1] The factual basis of the petition is not in dispute; the minor, a two-month-old baby girl, suffered multiple skull fractures when her mother kicked and stomped on her. The DPSS established a prima facie case for detention on February 15, and on March 1 the minor was released to her maternal grandmother. The minor's mother was involuntarily detained at a state mental hospital at the time and throughout the following proceedings, although she was released on an "out order" to personally attend the adjudication hearings in June, July and November. All parties  the minor, mother, father, maternal grandmother and DPSS  were represented by counsel at the adjudication hearings. On July 6 the court signed findings that, inter alia, the father was able to care for the child, was employed, had a stable residence, and proper day-care arrangements for the child. On July 20, the adjudication hearing was continued to reopen argument on the truth of that specific finding. At the final adjudication hearing in November of 1978 the petition was dismissed with prejudice and the minor was released to the custody of her father.
The evidence in this case is set against a background of conflicting procedures in juvenile court dependency proceedings.
The minor's mother and father were not married and did not live together although they had been romantically involved for a number of *597 years. On the morning of the injury, the mother's female roommate sprinkled a narcotic drug believed to be PCP (angel dust) on their breakfast food. The mother went into a psychotic state and believed she had to drive the devil out of the baby by stomping on it; she had no prior history of drug or alcohol abuse. The father appeared personally at the preadjudication hearing in March. Initially, he was amenable to the minor's placement with her maternal grandmother in Texas. At the adjudication hearing in June, however, he testified that he only wanted the baby to have a good home until the mother was well enough to care for her child. He stated that he did not want to give up the baby and would prefer to keep the child himself. However, he travelled frequently in his employment as a plasterer and had no permanent residence; when he was in town he slept at the home of various relatives or with the child's mother. The court suggested that the father get a custody order from the family law court and continued the hearing for that purpose. It is not clear from the record why the father did not do this. The minor meanwhile remained with her maternal grandmother in Texas.
Before the final adjudication hearing in November an estrangement developed between the father and maternal grandmother, who had previously enjoyed a warm relationship. The grandmother, having returned to California with the baby for the dependency proceedings, was trying to terminate the relationship between the child's mother and father; she refused to allow the father to visit his child. At the last hearing, the court stated it had read the social worker's report, which contained this information and had recommended sustaining the petition with placement at the grandmother's home in Texas. The social worker who prepared the report testified at this hearing. In deciding to dismiss the petition, over objection by county counsel, the court stated:
"So, we now come down to what I believe to be the basic question in this case ... I believe the thrust of the Kelvin M. case [(1978) 77 Cal. App.3d 396 (143 Cal. Rptr. 561)] is that when a parent who has not been involved in the injury to the child comes into court, shows the interest and concern to come into court, [and] demonstrates an ability to care for the child ... that the Court should not take jurisdiction in that case, but... should do the logical, rational, reasonable thing, which I believe Kelvin M. implicates and that is to give that child to the parent who can care for the child rather than the Court taking jurisdiction ... I think that before these courts declare children to be dependents of the Court that ... there should be a showing that there is no parent or *598 guardian capable of caring for the child; to create a dependence is an intrusion, a tremendous intrusion in parental rights....
"I believe that the case of Kelvin M. leads to the conclusion that in this type of case the petition should be dismissed. If I am wrong there, I still believe I am empowered to dismiss a petition in the interest of justice. For both reasons I am going to order that the petition be dismissed and that La Shonda be returned to her parent who does have joint custody of that child."
DPSS contends on appeal that (1) the trial court dismissed the petition on an erroneous understanding of statutory and case law, (2) the court improperly read the social study report before determining jurisdiction, and (3) the court abused its discretion by dismissing the petition. We cannot agree with the first two contentions, but we do agree with the third. Dismissal with prejudice in this case constituted an abuse of discretion which requires reversal for the reasons stated below.
DPSS considers the first issue of central importance because of conflicting legal interpretations by judicial officers in juvenile court dependency proceedings where the jurisdictional facts of the petition are directed against the parent who actually had custody of the minor but the noncustodial parent seeks to have the petition dismissed. Primarily, DPSS argues that the court erred in its opinion that the case of In re Kelvin M., supra, mandates dismissal of a dependency petition where the nonabusing parent seeking custody is employed and is capable of caring for the minor.
In re Kelvin M. is only superficially similar to the case before us in its facts that the minor's parents there were not married, the minor's mother was hospitalized in a psychiatric ward, and the minor's father requested custody. The thrust of that case, in its reversal of the juvenile court's order sustaining the section 300 dependency petition, was a due process issue; the trial court had denied the natural father's right to a hearing on his offer of proof that he was willing and capable of exercising control over the minor. (Id., at pp. 399, 402.) We have no due process issue before us; the juvenile court in this case bent over backwards in allowing the father's testimony at each hearing in order to ascertain whether he was capable of providing proper and effective parental care. Kelvin M. therefore does not apply to the facts before us and does not mandate dismissal in the absence of a due process violation.
*599 Far closer to the legal issues before us is the case of In re Adele L. (1968) 267 Cal. App.2d 397 [73 Cal. Rptr. 76], where a divorced father sought reversal of a dependency adjudication and disposition after the mother, who had been awarded custody of their son, failed to provide proper parental care. This court upheld the adjudication of dependency in Adele L. for the same reason that applies to sustaining La Shonda's petition here, where the minor's parents do not share the same home. (1) DPSS is not required to prove two petitions, one against the mother and one against the father, in order for the court to properly sustain a petition or adjudicate a dependency. (Id., at p. 404.) We must remember that the dual purpose of dependency proceedings is to protect the welfare of the minor and to safeguard parents' right to properly raise their own child. A petition is brought on behalf of the child, not to punish the parents. (Collins v. Superior Court (1977) 74 Cal. App.3d 47, 52 [141 Cal. Rptr. 273].) The interests of both parent and child are protected by the two-step process of a dependency proceeding, with its separate adjudication and disposition hearings. Thus, when DPSS makes a prima facie case under section 300 by proving the jurisdictional facts at the adjudication hearing, it is not improper for the court to sustain the petition; not until the disposition hearing does the court determine whether the minor should be adjudged a dependent. (§ 360.) At the disposition hearing, however, the minor may not be taken from the physical custody of a parent unless the court finds that the parent is incapable of properly caring for the child, that such placement would be detrimental to the child, and that placement outside the home would be in the child's best interests. (§ 361; Civ. Code, § 4600; In re Carmaleta B. (1978) 21 Cal.3d 482, 495-496 [146 Cal. Rptr. 623, 579 P.2d 514]; In re B.G. (1974) 11 Cal.3d 679, 695 [114 Cal. Rptr. 444, 523, P.2d 244].)[2]
(2) Since we decided Adele L., supra, the Legislature has added sections 355.1, 355.2, 355.3 and 355.4 to the Welfare and Institutions Code.[3] These sections create presumptions as to the need of proper and *600 effective parental care, neglect, cruelty and physical abuse, respectively. The presumptions are rebuttable and affect only the burden of producing evidence. (§ 355.6.) By making one fact prima facie evidence of another fact, these statutes allow DPSS to easily establish its case and the court to create a dependency under section 300, subdivisions (a) and (d) where it is necessary to quickly remove a neglected or battered child from an unfit home. Each of these statutes was specifically worded to apply to "either parent," by which means they effectively implement the disjunctive provisions of section 300. It is clear that where a minor had been neglected or abused by either parent, these code sections support a judicial finding that the minor is a person described by section 300. As a result, where there are two parents with separate homes, the child can be removed from the home of the unfit parent at the adjudication hearing without prejudicing the other parent's right to gain custody of the child at the disposition hearing upon a sufficient showing that he or she is capable of providing proper parental care. (3) The court here felt that elements involved in a sufficient showing of proper and effective parental care include employment, a stable residence, and appropriate day-care arrangements. We need not decide in this case what constitutes a sufficient showing because the facts here obviously contradict such a finding, since the father had no home of his own and was away so often that he intended to leave the baby for full-time care with relatives instead of day-care arrangements. The court erred in this case by finding that La Shonda's father had made a sufficient showing that he was "a parent capable of exercising proper and effective parental care" when the evidence, discussed above, clearly refutes such a finding. It is possible that a noncustodial parent who lives apart from the custodial parent, and had no reason to believe the custodial parent would neglect or abuse the child, could make a sufficient showing that he or she is capable of exercising proper and effective parental control. However, this is not such a case.
*601 (4) The argument that the court improperly read the social study report before determining jurisdiction is without merit. California Rules of Court, rule 1365(d), based on In re Biggs (1971) 17 Cal. App.3d 337 [94 Cal. Rptr. 519], specifically authorizes this practice in a dependency proceeding as follows: "A probation or social worker's report, including any social study, containing information relevant and material to the jurisdiction hearing is admissible if, on request of the parent or guardian, the probation officer or social worker is made available to be cross-examined regarding the contents of the report." Here, at the adjudication hearing where the court stated that it had read the report, the social worker who prepared the report was present in the courtroom and in fact did testify. Further, her testimony took place after the court said it had read the report; no opportunity for cross-examination was denied. The reliance of DPSS on In re Gladys R. (1970) 1 Cal.3d 855 [83 Cal. Rptr. 671, 464 P.2d 127] in alleging reversible error is misplaced; that case is distinguishable as an entirely different situation, where a section 602 delinquency proceeding involved commission of crime by a minor and possible violation of constitutional rights. (See also In re Michael V. (1974) 10 Cal.3d 676 [111 Cal. Rptr. 681, 517 P.2d 1145].)
(5) We must sustain the final argument that dismissal of the petition with prejudice constituted abuse of discretion in this case. This disposition, flying in the face of the evidence, left a child who had almost been killed by her mother still in the joint custody of that mother and father, without any possibility of protection that DPSS might otherwise provide. The court was surely aware of its power under sections 361 and 362 to adjudicate a dependency and place the child with her father or grandmother, limiting parental control and making all reasonable orders for the child's care and support. Its failure to exercise this power, in light of our enormous concern in California that the home of a battered child *602 needs to be proven safe (Landeros v. Flood (1976) 17 Cal.3d 399, 412, fn. 9 [131 Cal. Rptr. 69, 551 P.2d 389]), left this baby with no protection at all.
The judgment is reversed.
Kaus, P.J., and Ashby, J., concurred.
NOTES
[1] All references are to the Welfare and Institutions Code unless otherwise indicated.

The pertinent provisions of section 300 are: "§ 300. Persons subject to jurisdiction of juvenile court. Any person under the age of 18 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge such person to be a dependent child of the court: (a) Who is in need of proper and effective parental care or control and has no parent or guardian, or has no parent or guardian willing to exercise or capable of exercising such care or control, or has no parent or guardian actually exercising such care or control....
".... .... .... .... .... .
"(d) Whose home is an unfit place for him by reason of neglect, cruelty, depravity, or physical abuse of either of his parents, or of his guardian or other person in whose custody or care he is."
[2] For basically this reason, the disposition order in Adele L., supra, 267 Cal. App.2d at pages 405-406, was reversed because it did not contain the requisite findings to support removal of the son from his father's custody.
[3] These sections provide as follows: "§ 355.1. Presumption as to need of proper and effective parental care. Where the court finds, based upon competent professional evidence, that an injury, injuries, or detrimental condition sustained by a minor, of such a nature as would ordinarily not be sustained except as the result of the unreasonable or neglectful acts or omissions of either parent, the guardian, or other person who has the care or custody of the minor, such evidence shall be prima facie evidence of the minor's need of proper and effective parental care, and such proof shall be sufficient to support a finding that the minor is described by subdivision (a) of Section 300."

"§ 355.2. Presumption of neglect of minor. Where the court finds, based upon competent professional evidence, that an injury, injuries, or detrimental condition sustained by a minor, of such a nature as would ordinarily not be sustained except as the result of the unreasonable or neglectful acts or omissions of either parent, the guardian, or other person who has the care or custody of the minor, such evidence shall be prima facie evidence that the minor's home is an unfit place for him by reason of the neglect of either of his parents, his guardian, or other person who has the care or custody of said minor, and such proof shall be sufficient to support a finding that the minor is described by subdivision (d) of Section 300."
"§ 355.3. Presumption of cruelty to minor. Where the court finds, based upon competent professional evidence, that an injury, injuries, or detrimental condition sustained by a minor, of such a nature as would ordinarily not be sustained except as the result of the unreasonable or neglectful acts or omissions of either parent, the guardian, or other person who has the care or custody of the minor, such evidence shall be prima facie evidence that the minor's home is an unfit place for him by reason of the cruelty to him by either of his parents, his guardian, or other person who has the care or custody of said minor, and such proof shall be sufficient to support a finding that the minor is described by subdivision (d) of Section 300."
"§ 355.4. Presumption as to physical abuse of minor. Where the court finds, based upon competent professional evidence, that an injury, injuries, or detrimental condition sustained by a minor, of such a nature as would ordinarily not be sustained except as the result of the unreasonable or neglectful acts or omissions of either parent, the guardian, or other person who has the care or custody of the minor, such evidence shall be prima facie evidence that the minor's home is an unfit place for him by reason of the physical abuse of him by either of his parents, his guardian, or other person who has the care or custody of said minor, and such proof shall be sufficient to support a finding that the minor is described by subdivision (d) of Section 300."