Filed 4/30/14  In re K.H. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re K.H. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JOE W., <br><br> Defendant and Appellant; <br><br> T.H., <br><br> Defendant and Respondent. | D065013 <br><br> (Super. Ct. No. J512607D-E) |

APPEAL from orders of the Superior Court of San Diego County, Carol Isackson, Judge.  Affirmed.

Valerie N. Lankford, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Dana C. Shoffner, Deputy County Counsel, for Plaintiff and Respondent.

Terence M. Chucas, under appointment by the Court of Appeal, for Defendant and Respondent.

Joe W. appeals from orders of the juvenile court granting a motion to terminate his Probate Code guardianship of his nephews, K.H. and O.H. He contends the juvenile court violated his due process rights in deciding the motion before making true findings on the allegations of the dependency petitions filed on the boys' behalf and erred in failing to dismiss the petitions, or strike their allegations against him, after terminating the guardianship. (Welf. & Inst. Code, § 728.)[1] We affirm the orders.

FACTUAL AND PROCEDURAL BACKGROUND

K.H. and O.H. (aged nine and eight, respectively) were placed with a paternal cousin under a guardianship in 2008 after their mother died; at the time, their presumed father, T.H., was incarcerated. When the original legal guardianship ended in 2012, Joe took custody of the boys and, in March 2013, he was appointed as their temporary guardian. At that time, Joe was receiving services from the Regional Center for mild mental retardation and public financial assistance consisting of supplemental Social Security benefits, cash aid and food stamps.

In September 2013, the boys' school requested a welfare check after a staff member reported that Joe smelled of alcohol and was walking clumsily when he came to

_____

[1]     All further statutory references are to the Welfare and Institutions Code.

2

pick the boys up after school. Police officers went to Joe's home, repeatedly knocked on the door and identified themselves as officers. K.H. came to the door but refused to open the security screen, telling the officers that Joe was asleep and he was afraid Joe would beat him if he did so.

When the officers were unable to rouse Joe by additional knocking, they became concerned about a possible medical emergency and forced their way into the apartment. The officers had difficulty waking Joe and had to handcuff him after they succeeded in doing so because he was agitated and threatening. The officers observed that Joe was extremely intoxicated and that the boys were dirty and wearing torn and unkempt clothes. The boys reported that Joe had been drunk all day, a common occurrence, and that they were afraid of him.

The officers reported that the apartment smelled of urine and alcohol and that the rugs in the bedroom the boys shared were smeared with dog feces. The sheets on the boys' bed were also very dirty and the bedroom had broken windows and blinds. The officers concluded that the boys were victims of general neglect and removed them from the home to Polinsky Children's Center.

A social worker interviewed the boys the next day. K.H. reiterated that Joe was always drunk and also used marijuana, that Joe hit and spanked him and threatened to hit him with a cord and that Joe did not let the boys go outside to play, but made them stay inside and watch television. K.H. also said that Joe touched him and his brother to clean their private parts and that he did not want to go back to live with Joe. O.H. confirmed

3

that Joe spanked him and his brother "in the butt" and drank vodka and smoked marijuana, but denied any sexual abuse.

The social worker also interviewed Joe, who said that in the time the boys had been in his care, he would discipline them by spanking or making them stand in the corner. Joe admitted that he smoked marijuana in the evenings, when the boys were in their bedroom, to help him sleep and that if he smoked marijuana during the day, it was only when the boys were in school. He denied being drunk the previous afternoon, but said that he could still function fine after having three or four drinks. He also denied making the boys stay inside all day, but indicated that he would always go with them if they went outside because the neighborhood was not safe.

The social worker confirmed that the small apartment was dirty. In addition to the dog feces and the urine smell, she found dead bugs inside the refrigerator, roaches in the pantry and spider webs in the kitchen. The dresser drawers in the boys' room were empty except for the presence of roaches.

The social worker talked to Joe's Regional Center case worker, who indicated that Joe had limited coping skills, had had difficulty following through on services that the center had offered and was currently overwhelmed by trying to care for the boys, both of whom had educational and mental health needs.[2] Joe had not brought the boys to the Regional Center for an assessment, despite having been asked to do so, and also had had difficulty following up with the boys' medical appointments.

---

[2] Both boys were very active and were taking medication after being diagnosed with attention deficit hyperactivity disorder.

On September 12, 2013, the San Diego County Health and Human Services Agency (the Agency) filed section 300 petitions on behalf of the boys. The petitions alleged that Joe was the boys' guardian and a consumer of Regional Center services, he smelled of alcohol when he picked the boys up from school, his home smelled of urine and alcohol and had dog feces on the floor, and the boys were afraid of him. (§ 300, subd. (b).) The petitions also alleged that the boys had been left without any provision for their support. (*Id.*, subd. (g).) The Agency recommended providing Joe services to address his substance abuse and other issues and supervised visitation.

Joe was present, and represented by appointed counsel, at the detention hearing and denied the allegations of the petitions. The Agency reported that Joe's temporary guardianship of the boys was scheduled to expire in December 2013 and the boys did not want to visit him. The juvenile court made a prima facie finding under section 300, subdivisions (b) and (g) and ordered that Joe have supervised visits with the boys.

After the detention hearing, the Agency placed the boys in a foster home. Although Joe had supervised visits with the boys, he consistently left the visits early and his interactions with the boys were somewhat limited; visitation was ultimately canceled after the New Alternatives Family Visitation Center reported that the visits "[did] not seem productive."

5

In October 2013, the Agency received a child abuse hotline report that Joe had sexually abused K.H. when K.H. lived with him. The San Diego Police Department opened an investigation into the allegations.[3]

At the continued jurisdictional/dispositional hearing, the juvenile court found there was a "high likelihood" that the probate court would not continue Joe's temporary guardianship because the boys' father was attempting to reunify with them. Joe set the matter for a contested hearing on the allegations contained in the petitions and on the issue of whether the boys should be returned to his custody. Shortly thereafter, the Agency filed a motion to terminate Joe's temporary guardianship of the boys under section 728, subdivision (a).

At the contested hearing on the termination motion and the jurisdictional issues, the Agency requested that the juvenile court hear and decide the motion first. Joe objected, requesting in part that the jurisdictional issues be resolved first or, alternatively, that if the court granted the motion, it dismiss the petitions as moot since most of the allegations therein pertained to him.

After hearing argument, the juvenile court proceeded with the termination motion first, admitting without objection the detention report, the jurisdictional/dispositional report and addendum reports prepared in October and November. The parties stipulated that if Joe was called as a witness, he would testify that he wanted the boys returned to his care, his home was now clean and he was working with a parenting coach. The

---

[3] The record does not include any indication as to the outcome of the investigation.

juvenile court found by clear and convincing evidence that the boys' best interests supported termination of Joe's temporary guardianship, noting that although Joe had made a significant effort to meet the boys' needs, they did not want to maintain contact with him and, given his own circumstances, he had only a limited ability to meet their needs for extensive attention and supervision. The court excused Joe and his counsel from the proceedings.

Turning to the jurisdictional issues, the juvenile court granted the Agency's request to amend the petitions, in part to reflect that Joe was the former temporary guardian for the boys. The court considered the evidence previously admitted at the hearing and found by clear and convincing evidence that the allegations of the amended petitions were true.

Joe appealed.

## DISCUSSION

1.  *Did Joe Have a Due Process Right to Participate in the Jurisdictional and Dispositional Hearing After the Termination of the Temporary Guardianship*?

"The juvenile court may terminate . . . a guardianship of the person of a minor previously established under the Probate Code . . . if the minor is the subject of a petition filed under Section 300" (§ 728, subd. (a)) and there is clear and convincing evidence that terminating the guardianship is in the child's best interests (e.g., *In re Merrick V.* (2004) 122 Cal.App.4th 235, 254). Under the statutory scheme, the hearing on a termination motion "may be held simultaneously with any regularly scheduled hearing held in proceedings to declare the minor a dependent child . . ., or at any subsequent hearing

7

concerning the dependent child . . . ."  (§ 728, subd. (a); see also *In re Xavier R.* (2011) 201 Cal.App.4th 1398, 1413 [recognizing that the juvenile court has the authority to terminate a probate guardianship at any stage in the dependency proceedings].)

Despite the clear statutory language allowing a section 728 motion to be brought at any point during a juvenile dependency proceeding, Joe contends that the juvenile court violated his due process rights by terminating his guardianship before conducting the jurisdictional and dispositional hearing.  Specifically Joe argues that the court's ruling prevented him from defending against the allegations of the petitions and thus violated his due process rights.

Joe's argument is unavailing.  He had notice of the motion, was present and represented by appointed counsel at the hearing and had the opportunity to respond to evidence presented in support of the motion and to present his own evidence in opposition thereto.  Moreover, Joe cites no authority, and we find none, to establish that a probate guardian has a due process right to continue participating in the juvenile dependency proceedings once his guardianship has been terminated.  Joe has not established a violation of his due process rights.

2.     *Did the Juvenile Court Err in Failing to Dismiss the Petitions or Strike the Allegations Relating to Joe?*

Joe makes an alternative argument that the juvenile court was required to either dismiss the petitions as moot or strike the allegations therein relating to him.  However, the fact that Joe was terminated as the probate guardian for the boys in no way renders moot the allegations of the petitions setting forth the circumstances on which the juvenile

court was being asked to step in and protect the boys. (See *In re La Shonda B.* (1979) 95 Cal.App.3d 593, 599.) Similarly, since Joe had an opportunity to respond to the precise evidence that the juvenile court relied on to make true findings on the allegations in the petitions at the jurisdictional and dispositional hearing, he was not unduly prejudiced by those allegations even though the true findings thereon may have an adverse effect on his ability to seek the boys' placement with him in the future.

### DISPOSITION

The orders are affirmed.

HUFFMAN, Acting P.J.

WE CONCUR:

HALLER, J.

McDONALD, J.