Filed 8/31/20  Francisco H. v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| FRANCISCO H., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF TULARE COUNTY, <br><br> Respondent; <br><br> TULARE COUNTY HEALTH AND HUMAN SERVICES AGENCY, <br><br> Respondent. | F081282 <br><br> (Super. Ct. Nos. JJV070071A, JJV070071B) <br><br><br> **OPINION** |

## THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  John P. Bianco, Judge.

Francisco H., in pro. per., for Petitioner.

No appearance for Respondent.

No appearance for Real Party in Interest.

-ooOoo-

---

[*]     Before Franson, Acting P.J., Smith, J. and Snauffer, J.

Francisco H. (father), in propria persona, seeks extraordinary writ relief from the juvenile court's order setting a Welfare and Institutions Code section 366.26 hearing[1] for September 28, 2020, as to his now eight- and six-year-old daughters, Bella H. and Lily H., respectively. The children's mother, Ashley R., did not file a writ petition. Father contends he demonstrated his commitment to his daughters and fully complied with the juvenile court's requirements to reunify. He seeks the children's return to his custody or continued reunification services and visitation. We deny the petition.

**PROCEDURAL AND FACTUAL SUMMARY**

Dependency proceedings were initiated in September 2016 after Ashley crashed her car with the children inside into the car of her boyfriend, Kenneth. Kenneth had broken up with her and she was angry. Ashley was arrested and charged with child endangerment. The children were uninjured. They were taken into protective custody by the Tulare County Health and Human Services Agency (agency).

The parents were divorced after a brief marriage. Ashley had primary physical custody and father had visitation on weekends. However, he had not seen the children for approximately one and one-half years and Ashley did not know his whereabouts. Father and Ashley had a history of domestic violence and she obtained a restraining order against him, which expired in July 2017. He was convicted of domestic violence charges and ordered to complete a 52-week batterer's treatment program.

The juvenile court ordered the children detained pursuant to an amended dependency petition filed by the agency, alleging they came within the court's jurisdiction under section 300, subdivisions (b) and (g). The petition was amended to add allegations that the children witnessed father putting his hands around Ashley's neck and was incarcerated for corporal injury to a spouse.

---

[1]     Statutory references are to the Welfare and Institutions Code.

2.

Father claimed he was wrongly convicted of domestic violence. While being assessed for a domestic violence program, he was referred for a mental health evaluation and was diagnosed with bipolar disorder with psychotic features and intermittent explosive disorder. He did not return to be reassessed for domestic violence services. He said Ashley had serious mental health issues and was unstable. He disclosed smoking marijuana for medicinal purposes but his marijuana card was expired.

In December 2016, the juvenile court adjudged the children dependents pursuant to section 300, subdivision (b), dismissed the subdivision (g) allegations, ordered them removed from parental custody and ordered the parents to participate in reunification services. The court set the six-month review hearing for June 14, 2017. The children were placed with a nonrelative extended family member.

Although Ashley was not fully compliant with her services plan, the agency returned the children to her custody with family maintenance services in January 2017 because they were at risk of changing placement for the fourth time. The agency had concerns about Ashley, however, because she maintained a relationship with Kenneth, claiming they were just friends. In addition, she said she was diagnosed with stage 2 cervical cancer and was taking pain medication.

Father meanwhile was participating in some of his services but showed signs of mental instability. Upset that Ashley was allowing the children contact with Kenneth, he telephoned the agency in May 2017 and left a voice message stating, " 'Because you guys are not doing anything, you are going to make me do something crazy now.' " He also said that he wanted to kill himself when he could not see the children.

On June 14, 2017, the juvenile court deemed the hearing a family maintenance review for Ashley and a six-month review for father. The court continued services for the parents and set a combined family maintenance and 12-month review hearing (combined review hearing) for November 29, 2017. The court also ordered no contact between the children and Kenneth.

The juvenile court continued services for the parents at the combined review hearing on November 29, 2017. During the period under review, Ashley maintained her relationship with Kenneth but denied allowing him contact with the children. She continued to complain of pain but did not have cervical cancer. She stopped drug testing for approximately four months beginning in June 2017 because she did not feel well. Father regularly visited the children and appeared to be emotionally stable. He and Ashley were communicating more effectively and in November 2017, he began unsupervised visitation. The agency planned to transition father to overnight visitation and return the children to shared parental custody by March 2017. The court set a combined family maintenance and 18-month review hearing for March 2, 2018 (combined March 2018 review hearing).

In its report for the combined March 2018 review hearing, the agency maintained its recommendation the juvenile court return the children to the parents with family maintenance services but expressed concern that Bella was missing school and Ashley was cancelling Bella's therapy sessions. In addition, Ashley had been diagnosed with a hernia and was taking her prescribed pain medication plus pain medication father gave her. She also tested positive for opiates on December 27, 2017, and failed to test three times prior to that when requested to do so. Ashley was unable to provide the agency her medication bottle to verify her prescription. She said she was no longer taking the medication because she was pregnant with Kenneth's child.

On March 2, 2018, the juvenile court returned the children to the parents under a plan of family maintenance and granted the parents alternating weekly custody. The court set a family maintenance review hearing for August 24, 2018. Meanwhile, Ashley gave birth to a son, M.B.

The juvenile court continued the family maintenance review hearing until October 3, 2018, and continued family maintenance services until March 27, 2019.

On March 18, 2019, the agency filed a supplemental petition (§ 387), alleging family maintenance proved ineffective in protecting the children after father threatened to kill himself with a gun while meeting with a social worker at the agency office on March 6, 2019. He also threatened to shoot the agency staff and law enforcement if they tried to intervene. He was involuntarily detained and placed on a section 5150 hold. He was released on March 12, 2019, with medication and a follow up appointment but did not keep the appointment or contact the agency.

On March 19, 2019, the juvenile court detained the children from father pursuant to the supplemental petition, vacated the May 27, 2019 family maintenance review hearing and set a contested jurisdictional/dispositional hearing on the supplemental petition for May 10, 2019.

On April 4, 2019, father left the social worker a voicemail stating:

" 'Hey Rebecca, remember me, [Francisco H.], yeah, the guy you lied about. Okay. Yeah, the one that supposedly was going to shoot you in the head. You f****** dumb liar. Alright. I'm f****** pissed off too because of this bulls[***] you're making me go through knowing that I did not do none of that okay. Knowing my f****** situation, knowing I just got beat up. Okay, what's wrong with you, dude? F****** it's so easy for you to lie about your patients, dude, your people. What's wrong with you? Okay, now remember this, if something bad happens to you it's not double jeopardy cause I never f****** said that s***, okay, and now I really meant it okay. Alright, now I'm really pissed off cause you f****** lied about me. You said all this f****** bulls***, to send me to no f[***]ing hospital because of you. Okay, now I'm going to get you back remember that.' "

Father left similar messages for his therapist and the social worker supervisor. The agency filed a restraining order, which was granted on April 29, 2019.

The agency recommended the juvenile court sustain the supplemental petition and not offer father additional services. It recommended the court continue to supervise Ashley under a plan of family maintenance because she was resistant to providing the children mental health services and continued her unstable relationship with Kenneth.

Father was not present at the May 10, 2019 jurisdictional/dispositional hearing on the supplemental petition because he was hospitalized on a section 5150 hold. The court continued the hearing to May 28, 2019.

On May 28, 2019, father's attorney informed the juvenile court father was detained on a section 5150 hold. The court appointed a guardian ad litem for him and set the matter for a contested hearing on June 7, 2019. On June 7, the court sustained the supplemental petition and terminated services for father but granted him supervised telephone contact and monitored written correspondence with the children. The court set a hearing on July 15, 2019, to address visitation for him and a family maintenance review hearing for Ashley on October 28, 2019.

The agency recommended the juvenile court find visitation with father would be detrimental to the children. He was unable to keep track of the scheduled telephonic visits and was often unavailable to take the calls. When he was available, he was inappropriate; he did not allow the children to speak, threatened to send scary movie characters to them if they were bad and made promises he could not keep. He also repeatedly asked Ashley to disregard the court's order and allow him to have unauthorized contact with the children.

On July 15, 2019, the juvenile court ordered one supervised telephone visit a week between father and the children, to be supervised by the agency, and confirmed the family maintenance review hearing scheduled for October 2019.

The agency recommended the juvenile court dismiss its dependency jurisdiction at the October 2019 family maintenance review hearing and grant Ashley sole legal and physical custody of the children. The agency's recommendation was based in part on Ashley's representation that she and Kenneth were no longer living together. She and Bella were participating in counseling and the children were doing well. Father had not had any recent outbursts and the children wanted to visit him in person. The agency also

recommended that father have at least two telephone calls each month, 10 minutes with each child, supervised by the paternal grandparents.

Ashley did not appear at the hearing on October 28, 2019, and the juvenile court expressed concern about her ongoing contact with Kenneth and the potential for domestic violence in their relationship. Minors' counsel requested a continuance to make sure Ashley was drug testing. The court continued the hearing to November 7, 2019, and stated it would detain the children if Ashley was not present at the next hearing.

On November 4, 2019, Ashley told the social worker Kenneth was living in her home again and they were trying to work things out. She said she did not attend the hearing on October 28 because she was applying for rental assistance and that was the only day she could apply. The social worker asked Ashley to spot test on November 5 and she tested positive for opiates. She had a prescription for an opioid, which she said was prescribed for pain associated with a tumor on her side. The social worker was concerned because Ashley did not consistently drug test and was taking pain medication for different medical conditions.

The agency recommended the juvenile court retain its dependency jurisdiction for another 90 days to allow Ashley to provide updated information regarding her medical condition and treatment. It also informed the court it planned to refer Ashley and Kenneth for conjoint counseling.

On November 7, 2019, the juvenile court continued the family maintenance review hearing to February 3, 2020, and ordered Ashley to provide her prescription for pain medication. Ashley provided a letter from her physician dated November 7, 2019, stating she had several health conditions necessitating her medical treatment. She also provided a summary of her diagnoses and prescriptions.

On November 21, 2019, Ashley informed the social worker of a domestic violence incident that occurred between her and Kenneth the day before that resulted in his arrest. They were in the garage when she accused him of cheating on her with another woman.

Kenneth grabbed her by the throat with both hands and choked her for about 30 seconds. Ashley contacted the police. According to the police report, Ashley's neck was red on the right side. Kenneth said he tried to extricate himself from the situation and go inside the residence when Ashley pushed him. He pushed her to get around her and she grabbed him by the shirt and smacked him on the right side of the face. He pushed her by the throat with one hand to get around her. The officer did not observe any redness on Kenneth's face and chest that would support his allegations and arrested him.

On January 9, 2020, the social worker met with Ashley at the family home for the monthly contact. Ashley said Kenneth was there and said they were trying to work things out. Ashley claimed they were not a couple but Kenneth came to visit the children. The children denied witnessing Ashley and Kenneth argue or fight. Ashley and Kenneth signed a safety plan agreeing not to engage in domestic violence and promising to walk away if any potential domestic violence incidents arose. They were provided a list of parenting classes and stated they were willing to attend domestic violence services.

On January 14, 2020, the agency filed a subsequent petition (§ 342) as to Bella and Lily, alleging Ashley failed to protect the children from domestic violence between her and Kenneth. The agency did not take the children into protective custody.

On January 23, 2020, the juvenile court convened a hearing on the subsequent petition. Ashley did not appear, sending a message to the court that she had to take M.B. to the hospital the day prior. He was diagnosed with a stomach virus and one of the girls woke up that morning with similar symptoms. The court ordered Ashley to bring proof of her hospital visit and continued the hearing to January 27.

On January 27, 2020, Ashley was arrested for corporal injury to a spouse. Ashley said Kenneth accused her of taking his "money card" and started dumping her dresser drawers and threatened to tear up the whole house to look for it. She settled him down and tried to get him out of her room, pushing him most of the way. He was yelling at her and then scratched his own face. She knocked a phone out of his hand and it may have

8.

hit him in the face. Kenneth called the police and she was arrested. The children were in the living room and did not witness the incident. Ashley denied she and Kenneth had any other incidents and said they were getting along well. She planned to check with Kenneth to see if he wanted to continue their relationship.

On January 27, 2020, the juvenile court ordered all three children detained pursuant to the subsequent petition and set a jurisdictional/dispositional hearing for March 12, 2020. The following day, the agency took the children into protective custody and placed them in foster care.

On January 29, 2020, the agency filed a supplemental petition, seeking Bella and Lily's removal. The agency amended the petition to reflect that Ashley was incarcerated. It also filed an original first amended petition as to M.B., alleging counts under section 300, subdivisions (b), (g) and (j).

On January 30, 2020, at a detention hearing on the supplemental and subsequent petitions as to Bella and Lily and a first amended original petition as to M.B., the court detained the children, vacated the February 3 and February 6, 2020 hearings and set a contested jurisdictional/dispositional hearing for March 16, 2020. On February 7, 2020, the children were placed with a maternal aunt and uncle.

On March 16, 2020, the juvenile court convened and continued the contested jurisdictional/dispositional hearing to May 11, 2020, because of the state shutdown order. In its report for the hearing, the agency recommended the juvenile court discontinue further efforts to reunify Ashley with Bella and Lily and set a section 366.26 hearing. The agency recommended the court provide Kenneth reunification services to reunify with M.B. but deny them to Ashley. According to Ashley and Kenneth, they did not have any contact because there was a restraining order. However, they were seen together at a store in an affectionate embrace and left together in a car. The agency obtained a copy of the restraining order, which was active until 2023.

9.

The agency reported father consistently visited the children by telephone and was encouraging to them. The agency progressed him to video visits, which it recommended he continue to receive.

On May 11, 2020, the juvenile court set a contested hearing for June 1, 2020. On June 1, the juvenile court sustained the supplemental and subsequent petitions as to Bella and Lily and set a section 366.26 hearing for September 28, 2020. The court exercised its jurisdiction over M.B., ordered reunification services for Ashley and Kenneth and set a six-month review hearing for November 30, 2020.

## DISCUSSION

Father expresses his loving commitment to Bella and Lily and provides a brief history leading to the current situation. He contends he adhered to the best of his ability to every request made by the agency and the children's removal is more profound for him because he was not involved in the incident that required their removal. He objects to being considered too mentally unstable to have custody of his daughters and asserts that he was placed on a section 5150 hold because a statement he made was taken out of context. He desires nothing other than to be their "daddy" and to demonstrate that they should not be separated from him.

Dependency proceedings have a dual purpose—to protect the welfare of the child and to safeguard the parent's right to properly raise his or her own child. (*In re La Shonda B*. (1979) 95 Cal.App.3d 593, 599.) Where the juvenile court intervenes to protect a child and orders the child removed from parental custody, it must provide reunification services to assist the parent in resolving any problems that render the child unsafe in the parent's care and custody. (§ 361.5, subd. (a).) However, the duration of reunification services is limited by statute so as to provide the child stability as expeditiously as possible. Generally, the maximum period of reunification services that the court can grant a parent is 18 months from the time the child is taken into protective custody. (§ 361.5, subd. (a)(3)(A).)

Here, Bella and Lily were removed from Ashley's custody in September 2016 because she intentionally risked their lives by involving them in a car crash. Although father was not culpable in that incident, he posed a risk of harm to the children because of the domestic violence he inflicted upon Ashley. He also has a serious mental health condition, which when not properly treated, makes him erratic and physically harmful to himself and others. The juvenile court provided him 18 months of family reunification services from September 2016 to March 2018 followed by 12 months of family maintenance services until March 2019 when he had to be involuntarily detained for erratic and threatening behavior. Since family maintenance services had proven ineffective and father had received the maximum allowable period of family reunification services under the statute, the juvenile court had no choice but to discontinue reunification efforts. Although father complied with his visitation schedule over the remainder of the dependency proceedings and his mental condition stabilized, his status remained unchanged. He was not under a plan of reunification nor attempting to modify or change the court's prior orders in pursuit of reunification. Consequently, when the juvenile court denied Ashley services to reunify at the dispositional hearing on June 1, 2020, it had no choice but to set a section 366.26 hearing to select a permanent plan for the children.

We find no error.

## DISPOSITION

The petition for extraordinary writ is denied. This court's opinion is final forthwith as to this court pursuant to rule 8.490(b)(2)(A) of the California Rules of Court.

11.