Filed 3/16/22  Roger R. v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ROGER R.,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF FRESNO COUNTY,<br><br>Respondent;<br><br>FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Real Party in Interest. | F083742<br><br>(Super. Ct. No. 19CEJ300251-3)<br><br><br>**OPINION** |

### THE COURT\*

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Kimberly J. Nystrom-Geist, Judge.

Rodney Richard Rusca for Petitioner.

No appearance for Respondent.

Daniel C. Cederborg, County Counsel, and Lisa R. Flores, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

\*    Before Levy, Acting P. J., Snauffer, J. and DeSantos, J.

Roger R. (father) seeks an extraordinary writ from the juvenile court's orders issued at a contested combined six- and 12-month review hearing (Welf. & Inst. Code, § 366.21, subds. (e)(1) & (f)(1))[1] on January 5, 2022, terminating his reunification services and setting a section 366.26 hearing on May 4, 2022, as to his now one-year-old son, R.R. We deny the petition.

## PROCEDURAL AND FACTUAL SUMMARY

*Petition and Detention*

This case originated in Madera County in October 2020 when the Madera County Department of Social Services (department) took newborn R.R. into protective custody, placed him in foster care and filed a petition on his behalf, alleging he came within the juvenile court's jurisdiction under section 300, subdivisions (b)(1) (failure to protect) and (j) (abuse of sibling). Specifically, the petition alleged under subdivision (b)(1) that R.R. suffered or was at substantial risk of suffering serious physical harm because his mother, Amber J. (mother), exposed him to methamphetamine in utero. Under subdivision (j), the petition alleged R.R.'s siblings were removed from mother in January 2020 because of her methamphetamine use. She failed to comply with a plan for reunification and her reunification services were terminated in October 2020, eight days before R.R. was born. The petition alleged mother's ongoing methamphetamine use placed R.R. at risk of similar neglect.

Mother stated she and father were not an intact couple. She was staying rent free in exchange for house-sitting and planned to apply for government benefits. Father denied any history of child welfare intervention or substance abuse. He lived with his sister in Fresno and considered her, his mother, and another sister as his support system. He agreed several times to submit a hair follicle for testing to verify his sobriety but did

---

[1]     Statutory references are to the Welfare and Institutions Code unless otherwise noted.

not follow through. A social worker assessed his home, and it was deemed suitable. He possessed all the items necessary for taking care of a baby.

Father appeared at the detention hearing on October 21, 2020, and informed the juvenile court he was a member of the Cherokee tribe, had an enrollment number and R.R. was eligible for membership. Mother denied Native American ancestry. The court ordered father to provide his enrollment card and proof of a drug test and found the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) may apply. The court ordered R.R. detained and granted the department discretion to place R.R. with father once he was assessed. The court ordered supervised visitation, parenting classes and random drug testing for the parents and a substance abuse evaluation and recommended treatment for mother. The court set the jurisdictional hearing for November 24, 2020.

*Jurisdiction/Disposition*

The jurisdictional hearing was continued to December 10, 2020, and set as a contested hearing. Mother testified she and father separated in March 2020, but they had an amicable relationship and coparented well. She wanted father to have custody of R.R. The juvenile court sustained the allegations and set a dispositional hearing for January 5, 2021. The court confirmed that father was claiming enrollment in the Cherokee tribe and stated to county counsel, "So we have an ICWA issue. That needs to be addressed." County counsel assured the court the department would continue to perform its due diligence.

The dispositional hearing was continued to January 19, 2021. Meanwhile, father provided the department his tribal registration number and the name of a tribal relative and ICWA notices were sent to the Cherokee Nation, Eastern Band of Cherokee Indians, and United Keetoowah Band of Cherokee. The Cherokee Nation was unable to match the tribal relative's enrollment number with the date of birth provided and advised the department that father would have to submit an enrollment application.

On January 19, 2021, father was granted a continuance to February 2, 2021. On that date, the matter was set for a contested hearing on February 8, 2021. On February 5, 2021, father submitted a negative hair follicle test result from Omega Laboratories in Fresno for a sample he submitted on December 8, 2020. Another continuance was granted to March 8, 2021.

On February 4, 2021, Dovie Beard, the social worker assigned R.R.'s case, received a telephone call from the paternal aunt. She said father's ex-wife told her father asked her to falsify drug results.

On March 2, 2021, the department received a letter from the Eastern Band of Cherokee Indians, stating R.R. was neither registered nor eligible to register as a member of the tribe based on the information provided. He was therefore not considered an Indian child.

In its dispositional report, the department recommended the juvenile court deny mother reunification services because of her drug abuse. (§ 361.5, subd. (b)(10) & (11).) She had two previous substantiated referrals for child neglect in 2019, a criminal history including theft and drug-related offenses and was on probation. She had stopped drug testing and reporting to her probation officer and had an active arrest warrant. She stated she was participating in the Pathways program in Fresno where she was receiving mental health and substance use disorder treatment.

The department recommended the juvenile court order father to complete mental health and substance use disorder assessments and any recommended treatment and a parenting class and submit to random drug testing at the department's identified drug testing facility. Although he was the noncustodial parent and no allegations were sustained as to him, the department did not believe it safe to place R.R. in his custody because he refused on multiple occasions to complete a drug test at the department's approved drug testing facility. He did take a drug test which resulted in a negative result at another drug testing facility, but the department was not able to authenticate the

4.

facility's drug testing protocol. The department was concerned he had a substance abuse problem. There were also active warrants for his arrest in two counties.

The department had no concerns regarding R.R. He slept through the night and the care providers responded to him well and were attentive to his needs. Two paternal aunts had been in contact with the department requesting placement.

In an addendum report filed on March 5, 2021, the department recommended the juvenile court find the ICWA did not apply. The department also recommended the court transfer the case to Fresno County because both parents lived there.

Father testified at the contested dispositional hearing on March 8, 2021, about why he would not drug test at Fresno Drug Testing, the facility recommended by the department. He explained he filed a complaint against the facility for disclosing confidential information. He tried to get another referral for the Omega Laboratories but had not received one. He said he was sober and would do anything to reunify with R.R. Father admitted he was terminated from drug court but claimed it was for not paying for classes rather than for drug use. He posted bail for his outstanding warrants. He completed a drug program in 2012 and subsequently pled guilty to drug offenses as part of a plea deal.

Father worked 12-hour days, seven days a week, but had his mother and sister to help him care for R.R. He could also reduce his work hours. He began a parenting class, but stopped attending after 10 classes because the social worker lied to him. He refused to go to any drug testing laboratory that worked for the department. He was willing to restart services but preferred to have the case transferred to Fresno County. The hearing was continued to March 24, 2021.

On March 24, 2021, Beard testified she was not certain about father's sobriety because of the number of times the department asked him to test. Although he submitted negative hair follicle test results, it was not from a laboratory approved by the department.

5.

The juvenile court issued its ruling on April 1, 2021. The court adopted the department's recommendations regarding reunification services, found it would be detrimental to place R.R. in father's custody and ordered R.R. removed from parental custody. The court did not find father credible because he refused to drug test, asked his ex-wife to falsify drug test results for him and was uncooperative with the department. In addition, father's story about the testing facility being affiliated with the department did not make sense.

The juvenile court found there was reason to believe R.R. was an Indian child and ordered the department to conduct a further inquiry pursuant to section 224.2, subdivision (e) regarding his possible Indian heritage. The court ordered the case transferred to Fresno County.

The parents appealed, contending the juvenile court erred in not placing R.R. in father's custody and not finding there was reason to know that R.R. was an Indian child. We conditionally affirmed the court's removal order and remanded the matter for compliance with the ICWA. (*In re R.R.* (Jan. 26, 2022, F082736) [nonpub. opn.].)[2]

*Father's Reunification Efforts*

On April 15, 2021, the Fresno County Juvenile Court accepted jurisdiction from Madera County. The court set a six-month review hearing for September 22, 2021.

Over the following six months, father regularly visited R.R. but was inconsistent in participating in his court-ordered services and noncompliant. He completed a substance abuse assessment on June 15, 2021, but was not recommended for treatment. On July 9, he completed a mental health assessment and was attending therapy but missed four consecutive sessions in September and October. He completed a parenting program on October 21. He agreed to enroll in random drug testing on June 14 but failed

---

2    On our own motion, we take judicial notice of the appellate records in all related cases filed in this court and our opinion in case No. F082836. (Evid. Code, §§ 452, subd. (d), 459.)

6.

to register.  Because father was not drug testing, the department could not assess his sobriety.  His demonstrated lack of commitment to participating in services indicated his prognosis for reunification was poor.

In its report for the six-month review hearing, the Fresno County Department of Social Services (department) recommended the juvenile court terminate father's reunification services and set a section 366.26 hearing.

On September 22, 2021, the juvenile court granted the department's motion to find the ICWA did not apply and set the matter for a contested hearing on October 13, 2021. On October 13, the court appointed a guardian ad litem for father, combined the six- and the 12-month review hearings and set it as a contested hearing on December 15, 2021.

In its report for the contested hearing, the department recommended the juvenile court terminate father's reunification services and set a section 366.26 hearing to consider adoption as a permanent plan for R.R.  R.R.'s care providers were willing to adopt him and completed the approval process.

*Contested Six- and 12-Month Review Hearing*

The juvenile court conducted the contested review hearing over two sessions on December 15, 2021, and January 5, 2022.  Father's position at trial was that he completed everything but drug testing, which was beyond his control and the court should continue reunification services to the 18-month review hearing.

Social worker Nancy Salazar testified two social workers told father multiple times that he needed to sign up at Averhealth in Fresno to drug test.

Father testified that he lived in Fresno and worked as a security guard in Merced. He worked from 6:00 p.m. to 6:00 a.m., seven days a week.  He had not registered for random drug testing and had several reasons for not doing so.  He tried to enroll in July 2021, but the testing facility had the wrong last name on the referral.  He needed the social worker to verify his identity and contacted her several times, but she was either unable to meet him or was not in her office.  It was also difficult for him to test in Fresno

7.

during the day after working at night. He asked to test in Merced where he worked. Another issue he had was the inability to sit down to use the restroom. He had prostate problems and needed to sit. Averhealth in Fresno would not allow it but the testing facility in Merced did. He said he was sober. He drug tested for his work as a security guard and never tested positive. He did not believe that he had a substance abuse issue but knew the department believed he did and was willing to take off six months from work and complete an inpatient substance abuse program to satisfy the department.

Salazar was recalled and testified that Averhealth had a referral with father's correct name since April 2021. Father was going to be discharged from therapy because he missed several assessments. To her knowledge, there were not any notes in her records about father requesting to drug test in the city of Merced.

The juvenile court terminated father's reunification services and set a section 366.26 hearing for May 4, 2022. The court noted that random drug testing was important and did not believe that father was unable to drug test. Rather, the court considered him "manifestly able to comply with random drug testing." In addition, he had not progressed beyond supervised visitation and the court could not find there was a substantial probability R.R. could be returned to his custody by the 18-month review hearing in April 2022.

## DISCUSSION

Father contends the department did not make random drug testing accessible to him by allowing him to test in Merced. Therefore, he argues, the department did not provide him reasonable reunification services and the juvenile court erred in terminating them. We disagree.

*Reunification Services Generally*

Dependency proceedings have the dual purpose of protecting the welfare of the dependent child and safeguarding the parent's right to properly raise their own child. (*In re La Shonda B*. (1979) 95 Cal.App.3d 593, 599.) If the child is removed from parental

custody, the primary objective is to reunify the child with his or her family.  (§ 202, subd. (a).)  "The foundation and central, unifying tool in child welfare service is the [reunification] plan.  The [reunification] plan must provide for the child's care and case management and must provide services that facilitate both return and, concurrently, permanency."  (Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2020 ed.) Disposition Hearing, § 2.129[4].)  Reunification, however, is not an open-ended process. Consequently, the dependency statutes place a limit on its duration and require the juvenile court to monitor its progress by conducting periodic review hearings at six-month intervals.  (§§ 361.5, subd. (a); 366, subd. (a)(1).)

The purpose of reunification services is to place the parent in a position to gain custody of the child.  (*In re Karla C*. (2010) 186 Cal.App.4th 1236, 1244.)  To that end, the department must devise a reunification plan tailored to the unique needs of the family and make a good faith effort to help the parent access the services the plan provides.  (*In re Riva M*. (1991) 235 Cal.App.3d 403, 414.)  "The adequacy of reunification plans and the reasonableness of the [department's] efforts are judged according to the circumstances of each case."  (*Robin V. v. Superior Court* (1995) 33 Cal.App.4th 1158, 1164.)  "To support a finding reasonable services were offered or provided, 'the record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained *reasonable* contact with the parents during the course of the service plan, and made *reasonable* efforts to assist the parents in areas where compliance proved difficult ….'  [Citation.] 'The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances.' " (*Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1426.)

The first determination the juvenile court must make at each review hearing is whether returning the child to parental custody would create a substantial risk of detriment to the child's safety, protection or physical or emotional well-being.  Unless the

9.

court finds by a preponderance of the evidence the child's return would create a substantial risk of detriment, the court must return the child to the parent.  (§§ 366.21, subds. (e)(1) & (f)(1); 366.22, subd. (a)(1).)  If the court does not return the child, it must determine whether the parent was provided reasonable reunification services.  The court may not terminate reunification services at the 12-month review hearing and set a section 366.26 hearing unless it finds by clear and convincing evidence the services provided were reasonable.  (§ 366.21, subd. (f)(1).)

*Standard of Review*

We review the juvenile court's findings for substantial evidence.  (*In re Amy A.* (2005) 132 Cal.App.4th 63, 67.)  In so doing, "we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court."  (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.)  When the juvenile court is required to apply the clear and convincing standard of proof, "the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true."  (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011.)

*Substantial Evidence Supports the Juvenile Court's Reasonable Services Finding*

Whether father had a substance abuse problem was a concern from the inception of this case.  Although father denied any such problem, he had numerous criminal charges for drug-related offenses and was terminated from drug court in 2014 for noncompliance and failure to appear.  In addition, he refused throughout his year of reunification to drug test at a testing facility approved by the department.  Any drug test results submitted to the department were through father either by cell phone pictures or email, not by a testing facility.

In light of its concern that father had a substance abuse problem, the department incorporated into his reunification plan the objective that he demonstrate his ability to live a drug free lifestyle through drug testing by hair follicle and urine analysis. However, father did not comply. At the dispositional hearing in March 2021, he testified he would not test at Fresno Drug Testing because he filed a complaint against the facility. He claimed, however, he would do anything to reunify with R.R. and subsequently agreed to register for drug testing but did not. By the contested review hearing, he had more excuses for not testing, none of which the juvenile court found credible.

Sadly, father undermined his chances of reunifying with R.R. by not drug testing. The department was prepared to place R.R. with him if it could ascertain his sobriety or assist him in getting proper substance abuse treatment if he needed it. Instead, he refused to cooperate, leaving the juvenile court no choice but to terminate his reunification services. As the court noted, if father was "willing to do whatever was necessary [to reunify], he would have demonstrated that willingness to the Court by enrolling in random drug testing sometime after April [2021]."

We find no error in the juvenile court's finding father was provided reasonable reunification services and deny the petition.

## DISPOSITION

The petition for extraordinary writ is denied. This opinion is final forthwith as to this court pursuant to California Rules of Court, rule 8.490(b)(2)(A).

11.