Filed 4/27/22  Evelyn D. v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| EVELYN D., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF FRESNO COUNTY, <br><br> Respondent; <br><br> FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br> Real Party in Interest. | F083934 <br><br> (Super. Ct. No. 20CEJ300308-1) <br><br><br> **OPINION** |

## THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Elizabeth Egan, Judge.

Olga B. Saito for Petitioner.

No appearance for Respondent.

Daniel C. Cederborg, County Counsel, and Lisa R. Flores, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]    Before Levy, Acting P. J., Detjen, J. and DeSantos, J.

Petitioner Evelyn D. (mother) seeks an extraordinary writ from the juvenile court's orders issued at a 12-month review hearing (Welf. & Inst. Code, § 366.21, subd. (f)(1))[1] terminating her reunification services and setting a section 366.26 hearing on May 25, 2022, as to her now two-year-old son, D.S. She contends the juvenile court violated section § 16002.5 when it determined that real party in interest, the Fresno County Department of Social Services (department), provided her reasonable reunification services. She further contends the juvenile court erred by failing to continue reunification services to the next review hearing.

We affirm the juvenile court's orders and deny the petition. On this record, the juvenile court's finding the department provided mother reasonable reunification services and its order terminating them are supported by substantial evidence.

### PROCEDURAL AND FACTUAL SUMMARY

*Detention and Removal*

Eight-month-old D.S. was taken into protective custody on October 6, 2020, by the department after mother, then 17 and a juvenile dependent, left the group home where she and D.S. lived without telling anyone where she was going. She also left with D.S. on September 11, 2020, and returned the following day. She did not take any baby supplies, food, or diapers for D.S. When she returned, D.S. was dirty, very fussy and constipated. A social worker warned mother that D.S. may be removed from her custody if she left with him again. D.S. was placed in a foster home.

The department filed a dependency petition on D.S.'s behalf under section 300, subdivision (b)(1), alleging mother placed D.S. at risk of suffering serious physical harm or illness by leaving the group home for days at a time without adequate supplies and

---

[1] Statutory references are to the Welfare and Institutions Code.

refusing to tell anyone where she was staying. The identity of D.S.'s father was unknown.[2]

The juvenile court ordered D.S. detained pursuant to the petition and offered mother parenting classes, substance abuse and mental health evaluations and any recommended treatment. The court granted the department discretion to spot test mother for drugs. The court also ordered the department to provide D.S. a mental health evaluation and any recommended treatment. The court set the jurisdictional/dispositional hearing (combined hearing) for November 18, 2020.

Prior to the combined hearing, D.S. participated in a mental health assessment and was referred for attachment-based individual therapy to address secure and positive attachment.

At the combined hearing, the juvenile court adjudged D.S. a dependent child as alleged, ordered mother to participate in the services previously offered and set the six-month review hearing for May 5, 2021. Mother did not appeal.

*Mother's Reunification Efforts*

Mother's progress by the six-month review hearing was moderate. She was placed in a short-term residential treatment program and attended a parenting class. However, she left her placement six times from late November 2020 to early January 2021, causing her to miss multiple parenting sessions. She also struggled during her sessions because of her attitude. Mother completed a substance abuse assessment in late October 2020. She tested negative at that time and was not recommended for treatment. However, by early December 2020, she was enrolled at Averhealth for spot drug testing. She missed two drug tests, one in late February 2021 and the other in early March 2021 and then tested positive for marijuana twice in March 2021. As a result, she

---

[2]    Mother identified an alleged father who was excluded as the biological father by paternity testing.

had to complete a second substance abuse assessment. She participated in mental health therapy but was discharged for frequently missing her sessions. She progressed to unsupervised visitation but continued to run away. Consequently, the department resumed supervised visits. In its report for the six-month review hearing, the department recommended the juvenile court continue mother's reunification to the 12-month review hearing.

On May 5, 2021, at the six-month review hearing, the juvenile court found mother was provided reasonable reunification services, and continued them to the 12-month review hearing which it set for November 10, 2021. The court encouraged mother to accept the help that was being offered to her and advised her that if she did not make significant progress by the 12-month review hearing, her services could be terminated. Mother did not challenge the juvenile court's reasonable services finding on appeal.

Mother's progress did not improve in the months preceding the 12-month review hearing. She completed her parenting classes and was not recommended for mental health services. Her drug test results through August 16, 2021, were mostly negative. She missed three tests and tested positive once for marijuana in June. However, the department was concerned about D.S.'s safety while in mother's care. During a visit in early August, while at a shopping mall, mother walked away from D.S. while he was playing. He hit and bumped his face and the left side of his cheek was swollen. She walked away from him again while they were walking around the mall. He fell and hit himself on an ice cream machine and sustained a bump on his forehead.

The social workers met with mother on August 17, 2021, to discuss her progression in family reunification services and the possibility of progressing to unsupervised visits. Mother reported she was actively engaging with D.S. but did not participate in his attachment therapy sessions because she did not believe it was necessary. The social workers decided it was premature to advance to unsupervised visitation and encouraged mother to participate in D.S.'s attachment therapy.

4.

The social workers met with mother on August 26, 2021, after she missed several appointments for a substance abuse assessment. She explained she missed the appointments because she was sick and did not have transportation. She ultimately completed an assessment and was referred for outpatient substance abuse treatment. On August 30, 2021, mother tested positive for marijuana and missed four consecutive drug tests in September.

On September 22, 2021, the social workers met with mother to discuss her progress in services and the possibility of advancing to unsupervised visits. Mother stated she did not attend the attachment therapy sessions because she did not have transportation or had something else to do. Mother's clinician stated that she would close out mother's case if she missed one more attachment therapy session because D.S. was ready to graduate. Mother was offered intensive supervised visits but declined. The social workers decided against unsupervised visits because of mother's positive drug test results and missed tests. They also told mother they would recommend termination of her reunification services if she did not make significant progress by the next court hearing.

The social workers met with mother again on September 27, 2021, to discuss her drug test results and missed tests. Mother could not explain why she tested positive for marijuana on August 30, stating she last smoked marijuana in June 2021. She did not show for tests because she did not know how to get to the testing laboratory and did not have transportation.

On October 22, 2021, mother reported she began outpatient substance abuse treatment the month before. She was attending D.S.'s attachment therapy sessions and learning to cope with him. She was beginning to participate in spot testing and in additional services to assist with D.S.'s attachment issues. She missed two drug tests in early October and subsequently tested negative twice in mid to late October.

In its report for the 12-month review hearing, the department recommended the juvenile court terminate mother's reunification services and set a section 366.26 hearing. Although she more consistently visited D.S., she had not made significant progress in resolving her substance abuse. Nor had she demonstrated the ability to safely parent D.S.

On November 10, 2021, mother's attorney requested a contested 12-month review hearing, which the juvenile court set for February 2, 2022.

At the settlement conference on January 26, 2022, mother's attorney informed the juvenile court that mother was living with her father and stepmother and proposed that the department consider giving her more time to reunify. The court confirmed the matter for trial on February 2.

*Contested 12-month Review Hearing*

By the 12-month review hearing, mother was a nonminor dependent, having turned 18 in July 2021.

Mother's attorney attempted to elicit her testimony about what services were available to her while she was pregnant. The juvenile court sustained county counsel's relevancy objection to that question as well as to others concerning whether she was provided assistance with caring for D.S. in the group home and why he was removed. Mother learned about child development in her parenting class and how to redirect D.S. Through attachment therapy, she was learning to soothe D.S. and he was more responsive to her. She and D.S. continued to participate in one attachment therapy session each week.

Mother's biggest obstacle to participating in reunification services was lack of transportation. Services were not provided through videoconference and required that she attend in person. She was also attending school in the morning. The department did not provide her a bus pass. While she was in the group home, the staff provided her transportation. There was never a time conflict between her schooling and her services. Her father, stepmother or the court-appointed special advocate provided her

6.

transportation currently. She believed she could complete her services if given more time because she had a better support system and was more serious about reunifying.

On cross-examination, mother testified she was not given a bus pass while she was in the group home. She left the group home in December 2020. The department provided her a bus pass once she became a nonminor dependent. She began living with her father in June 2021. She did not believe she needed any additional services to reunify. She just needed an additional six months.

On redirect, mother speculated that she tested positive for marijuana because she was in a car for a couple of hours with five people who were smoking marijuana. She was also in a small apartment with people who were smoking marijuana. She claimed she last smoked marijuana in November 2021.

Social worker Natalie Soto testified she was never able to develop a rapport with mother. However, the lack of rapport did not equate to lack of engagement on mother's part. Mother was more communicative about her parenting classes than her mental health and substance abuse classes. Soto received information that mother might have been sexually exploited. The department did not address it but invited her "CSEC"[3] liaison to all of her meetings. Mother's attorney asked what additional measures the department took to address the traumatic experience she may have endured. The juvenile court sustained county counsel's relevancy objection.

From the beginning of the dependency case until July 2021 buses were free. In September 2021, the department issued mother a bus pass as part of her nonminor dependent case. Bus passes are valid for 31 days from the date they are first used. Mother's last positive test result for marijuana was December 16, 2021. Her last positive drug test was January 12, 2022, for creatinine. Soto consulted with a substance abuse

---

[3]    "CSEC" is not defined in the record. Given the context, we believe the acronym stands for commercially sexually exploited child.

specialist (SAS) to determine whether mother's positive result for marijuana could be attributed to being around other people using marijuana. The SAS informed her mother's explanation was not plausible.

Soto did not believe there were any additional services that could or should have been provided to mother. She did not believe mother was likely to reunify if provided another two months of services until the 18-month review hearing in April. Mother had not progressed beyond supervised visits, did not like riding the bus, and refused to drug test on January 3, 2022. Following Soto's testimony, the juvenile court continued the hearing to February 9, 2022, for argument and its ruling.

Mother's attorney argued mother attempted to comply with her services plan but needed additional support, which was not provided by the department, such as a mentorship program or family support. She pointed out that mother was a minor parent when D.S. was removed from her and she had a traumatic childhood. She was removed from her family when she was eight years old and did not have a mother as a role model. Consequently, it took her longer to develop parenting skills and she was hindered by having to attend high school classes as well as work on her case plan requirements. Nevertheless, she completed a parenting class, recognized the importance of attaching with D.S. and became more responsive to him. She was no longer leaving her placement and had support from her family. Given the barriers she had to overcome and the change in her circumstances, her attorney argued there was a substantial probability D.S. could be returned to her custody within a reasonable period of time.

The juvenile court terminated mother's reunification services, finding by clear and convincing evidence the services provided by the department were reasonable but her progress was moderate. The court believed the department considered mother's age and status and conducted numerous meetings to encourage her and direct her growth and D.S.'s safety. However, mother spurned the department's efforts. She declined the offer of intensive supervised visits, stating she did not need them while D.S.'s behavior toward

her indicated that she did.  Despite being enrolled in outpatient substance abuse treatment and pregnant, she continued to either test positive for marijuana or not show up to test. Mother was aware that missed tests jeopardized reunification yet continued to miss them. She claimed she lacked transportation but testified the group home and her father and stepmother provided transportation and she was given bus passes.  The court found mother did not demonstrate the ability to complete the objectives of her case plan and there was not a substantial likelihood D.S. could be returned to her after an additional period of reunification services.

## DISCUSSION

Mother contends the juvenile court and the department ignored special considerations accorded minor and nonminor dependent parents under the dependency statutes.  Specifically, she asserts the department failed to comply with section 16002.5 because it did not provide her preventive services prior to removing D.S. from her custody.  Therefore, she was not provided reasonable reunification services.  Further, she asserts, the juvenile court failed to recognize that her status as a minor parent and nonminor dependent qualified her for continued services under the exceptional circumstances enumerated in section 366.22

We conclude any argument regarding D.S.'s removal was forfeited for failure to raise it on appeal from the dispositional hearing.  We further conclude the juvenile court properly considered mother's nonminor dependent status in finding she was provided reasonable reunification services and in deciding to terminate them.

### Reunification Services Generally

Dependency proceedings have the dual purpose of protecting the welfare of the dependent child and safeguarding the parents' right to properly raise their own child.  (*In re La Shonda B.* (1979) 95 Cal.App.3d 593, 599.)  If the child is removed from parental custody, the primary objective is to reunify the child with his or her family.  (§ 202, subd. (a).)  "The foundation and central, unifying tool in child welfare service is the

9.

[reunification] plan. The [reunification] plan must provide for the child's care and case management and must provide services that facilitate both return and, concurrently, permanency." (Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2020 ed.) Disposition Hearing, § 2.129[4].)

Reunification, however, is not an open-ended process. Consequently, the dependency statutes place a limit on its duration and require the juvenile court to monitor its progress by conducting periodic review hearings at six-month intervals. (§§ 361.5, subd. (a), 366, subd. (a)(1).) For a child who on the date of initial removal from parental custody was under three years of age, as occurred here, court-ordered services are provided for six months from the dispositional hearing but no longer than 12 months from the date the child entered foster care. (§ 361.5, subd. (a)(1)(B).) A child is deemed to have entered foster care on the earlier of the date of the jurisdictional hearing or the date that is 60 days after the date on which the child was initially removed from parental custody. (§ 361.49.) D.S. was initially removed on October 6, 2020. The jurisdiction/disposition hearing was conducted on November 18, 2020. Sixty days from D.S.'s initial removal was December 6, 2020. The juvenile court was therefore authorized to provide mother reunification services up to May 18, 2021 (six months from the dispositional hearing), but no longer than November 18, 2021 (a year from November 18, 2020, the earlier date).

The purpose of reunification services is to place the parent in a position to gain custody of the child. (*In re Karla C.* (2010) 186 Cal.App.4th 1236, 1244.) To that end, the department must devise a reunification plan tailored to the unique needs of the family and make a good faith effort to help the parent access the services the plan provides. (*In re Riva M.* (1991) 235 Ca.App.3d 403, 414.) "The adequacy of reunification plans and the reasonableness of the [department's] efforts are judged according to the circumstances of each case." (*Robin V. v. Superior Court* (1995) 33 Cal.App.4th 1158, 1164.) "To support a finding reasonable services were offered or provided, 'the record

should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained *reasonable* contact with the parents during the course of the service plan, and made *reasonable* efforts to assist the parents in areas where compliance proved difficult .…' [Citation.] 'The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances.' " (*Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1426.)

In reviewing the reasonableness of reunification services, the juvenile court considers only those services provided since the dispositional hearing if it is conducting a six-month review hearing or since the last review hearing.  That is because the court was required at that prior hearing to find whether services were reasonable.  That finding, if unchallenged on appeal, is final and binding.  Since the juvenile court found mother was provided reasonable reunification services at the six-month review hearing on May 5, 2021, the relevant period for purposes of the 12-month review hearing was any time after that until the hearing in February 2022.

***The 12-Month Review Hearing***

The first determination the juvenile court must make at each review hearing is whether returning the child to parental custody would create a substantial risk of detriment to the child's safety, protection or physical or emotional well-being.  Unless the court finds by a preponderance of the evidence the child's return would create a substantial risk of detriment, the court must return the child to the parent.  (§§ 366.21, subds. (e)(1) & (f)(1), 366.22, subd. (a)(1).)  In determining whether to return the child to parental custody, the court must consider the efforts or progress of the parent and the extent to which he or she availed him or herself of services provided, taking into account the particular barriers to a minor parent or a nonminor dependent parent.  For each youth 16 years of age and older, the court shall also determine whether services were made

11.

available to assist him or her in the transition from foster care to successful adulthood. (§ 366.21, subd. (f)(1)(D).)

If the time period in which the court-ordered services were provided has met or exceeded the time period set forth by statute and the child is not returned to parental custody, the juvenile court must either set a section 366.26 hearing or continue the case up to 18 months from the date the child was originally taken from parental custody. The court may only continue the case if it finds there is a substantial probability the child will be returned to parental custody within the extended period of time or it finds that reasonable services were not provided to the parent. (§ 366.21, subd. (g)(1), (4).) Since D.S. was originally removed from mother's custody in October 2020, the court could only extend the case until April 2022.

If the juvenile court continues reunification services to the 18-month review hearing, it may extend services up to 24 months from the date the child was initially removed for certain parents, including a parent who was a minor or nonminor dependent at the time of the detention hearing. However, the court must also find the parent is making significant and consistent progress, there is a substantial probability the child will be returned to parental custody, and it is in the child's best interest to continue reunification efforts. (§ 366.22, subd. (b).) The court may also continue reunification services beyond the 18-month review hearing if it finds the parent was never provided reasonable reunification services. (*In re M.F.* (2019) 32 Cal.App.5th 1, 21.)

***Standard of Review***

We review the juvenile court's findings for substantial evidence. (*In re Amy A.* (2005) 132 Cal.App.4th 63, 67.) In so doing, "we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) When the juvenile court is required to apply the clear and

12.

convincing standard of proof, "the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011.)

***Substantial Evidence Supports the Juvenile Court's Finding Mother Was Provided Reasonable Reunification Services***

D.S. was removed from mother's care because she repeatedly left her group home with him and there were concerns that she was neglecting and not properly caring for him. The juvenile court ordered reunification services to teach her safe parenting practices and identify and treat any mental health or substance abuse issues. The department also offered her attachment therapy to work on her bond with D.S. and met with her regularly to discuss any issues she was having with completing her services and to advance her to unsupervised visitation. However, mother was uncooperative. She refused attachment therapy and intensive supervised visitation and continued to run away and use marijuana.

Mother does not argue the services provided since the six-month review hearing were not appropriate to her situation or that the department's efforts to assist her were inadequate. Rather, she contends that because she was a minor and then a nonminor dependent parent, the department was required to do more; it was required under section 16002.5 to provide her services to prevent D.S.'s removal. Its failure to do so, she argues, rendered the services it did provide deficient and the juvenile court's failure to see the connection between services to her and services to D.S. was error. We disagree.

Section 16002.5, known as the Teen Parents in Foster Care Act,[4] was added to support and preserve families headed by minor parents who are themselves dependents of

---

[4] Section 16004.5 was also added as part of the Teen Parents in Foster Care Act.

the juvenile court to ensure that the minor parents and their children are placed together in a family-like setting, unless doing so places the child at risk. (§ 16002.5, added by Stats. 2004, ch. 841, § 3.) As it relates to services, the statute requires the department to provide the minor parent, nonminor parent and their children "access to existing services for which they may be eligible, that are specifically targeted at supporting, maintaining, and developing both the parent-child bond and the dependent parent's ability to provide a permanent and safe home for the child. Examples of these services may include, but are not limited to, child care, parenting classes, child development classes, and frequent visitation." (§ 16002.5, subd. (a).) To support the preservation of the family unit, the statute also requires the department to refer the minor parent or nonminor dependent parent to "preventive services to address any concerns regarding the safety, health, or well-being of the child, and to help prevent, whenever possible, the filing of a petition to declare the child a dependent of the juvenile court pursuant to Section 300." (*Id.* at subd. (e).)

Mother's attorney attempted unsuccessfully to raise the issue of preventive services at the contested hearing. She asked mother whether there were any services in place for her at the group home when she was pregnant with D.S. and/or after he was born. Mother testified she lived with her brothers when she was pregnant with D.S. When she returned to the group home, no one helped her take care of him. Mother's attorney explained to the juvenile court her questioning was relevant to the reason D.S. was removed and whether he could remain with mother under family maintenance services. The court deemed counsel's line of questioning irrelevant because the issue whether the department made sufficient efforts to prevent D.S.'s removal was adjudicated at the dispositional hearing. Mother's failure to challenge the department's removal of D.S. at the dispositional hearing or on appeal from the dispositional order forfeited her right to raise it at any point thereafter, including on this writ petition. (*Steve J. v. Superior Court* (1995) 35 Cal.App.4th 798, 812.)

14.

We conclude mother's failure to timely challenge D.S.'s removal was a forfeiture and substantial evidence supports the juvenile court's finding she was provided reasonable reunification services.

***The Juvenile Court Did Not Abuse its Discretion in Not Continuing Reunification Services***

Mother contends the juvenile court had discretion to continue reunification services beyond 18 months under section 366.22, which governs the 18-month review hearing, because she falls within the minor dependent/nonminor dependent parent exception. It's failure to exercise its discretion, she argues, was error.

Mother ignores the fact the juvenile court was conducting a 12-month not an 18-month review hearing. As such, the court properly found it could not safely return D.S. to mother's custody, she was provided reasonable reunification services but made only moderate progress and there was not a substantial probability D.S. could be returned to her custody by the 18-month demarcation, which fell in April 2022. There is no authority for the court to continue services to 24 months from a 12-month review hearing in the case of a minor dependent or nonminor dependent parent.

Further, even assuming the exceptional circumstances applied to mother, the evidence still supported the juvenile court's decision to terminate her services. Given her lack of progress to that point, there was no evidence she could successfully reunify with continued services. Nor was there any evidence it would serve D.S.'s best interest to continue reunification efforts.

We find no error.

## DISPOSITION

The petition for extraordinary writ is denied. This court's opinion is final forthwith as to this court pursuant to rule 8.490(b)(2)(A) of the California Rules of Court.

15.